(893 P.2d 294)
No. 72,073

TRAVIS GRAHAM, *Appellant*, v. MICHAEL NELSON, WARDEN, EL DORADO CORRECTIONAL FACILITY; and THE SECRETARY OF CORRECTIONS OF THE STATE OF KANSAS, *Appellees*.

Opinion filed April 14, 1995.

*Russell L. Mills*, of Sanborn & Mills, Chartered, of Wichita, for appellant.

*Lou Allen* and *Julie Riddle*, special assistant attorneys general, for appellees.

Before ROYSE, P.J., ELLIOTT, J., and C. FRED LORENTZ, District Judge, assigned.

ELLIOTT, J.: Travis Graham appeals the denial of his habeas corpus petition (K.S.A. 60-1501) challenging his administrative segregation.

We affirm.

Graham, an inmate at the El Dorado Correctional Facility, was placed in administrative segregation pursuant to K.A.R. 44-14-302(g). On the same day, the Department of Corrections (DOC) issued a report stating "reliable information" showed he was dis-

tributing contraband in the prison. Prison officials searched Graham's cell and found no contraband.

Weekly review forms were filed for three months listing no change in Graham's status. Exhausting his administrative remedies, Graham filed his habeas petition, raising several challenges to his segregation. The trial court dismissed Graham's petition without addressing whether the state's regulations give rise to a state-created liberty interest.

On appeal, Graham's arguments are totally reliant on the existence of a state-created liberty interest with respect to his status in the prison population in order to bolster his due process argument.

Graham's filing of a habeas petition was the proper avenue to attack his administrative segregation. See *Levier v. State*, 209 Kan. 442, 449-50, 497 P.2d 265 (1972).

Because the operation of penal institutions is an executive function, the conduct challenged must clearly show an infringement of a constitutional right, shock the general conscience, or be intolerable to fundamental fairness. *Swisher v. Hamilton*, 12 Kan. App. 2d 183, 184, 740 P.2d 95, *rev. denied* 242 Kan. 905 (1987). We will reverse only on a clear showing of abuse of discretion. *Levier v. State*, 209 Kan. 442, Syl. ¶ 4, 497 P.2d 265 (1972); See *Foster v. Maynard*, 222 Kan. 506, Syl. ¶ 1, 565 P.2d 285 (1977).

Our primary issue is whether Kansas regulations governing administrative segregation create a liberty interest, which is required for any due process claim. Without a liberty interest, Graham's attack on his being placed in segregation simply lacks any constitutional foundation.

We recognize that another panel of this court has held that Kansas regulations recognize a state-created liberty interest with respect to administrative segregation. *Gray v. Nelson*, 20 Kan. App. 2d 900, Syl. ¶ 2, 893 P.2d 842 (1995). We also recognize that in *Shepherd v. Davies*, 14 Kan. App. 2d 333, Syl. ¶ 4, 789 P.2d 1190 (1990), we held that the *disciplinary* regulations involved there *did* create a protected liberty interest.

We disagree with *Gray*. The *Gray* panel relied primarily on *Hewitt v. Helms*, 459 U.S. 460, 74 L. Ed. 2d 675, 103 S. Ct. 864 (1983), and *Jones v. Marquez*, 526 F. Supp. 871 (D. Kan. 1981).

We choose to seek our guidance from a later Supreme Court case and a later Kansas federal case. In *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 104 L. Ed. 2d 506, 109 S. Ct. 1904 (1989), the Court clarified the due process standard. A state creates a protected liberty interest by placing substantive limits on official discretion—by establishing substantive predicates to official decision-making and by certain other mandates. 490 U.S. at 462.

The later Kansas federal case on which we lean is *Dotson v. Maschner*, 764 F. Supp. 163 (D. Kan. 1991), in which Judge Saffels found the administrative segregation regulations contain no mandatory language limiting the discretion of prison officials. 764 F. Supp. at 166.

K.A.R. 44-14-302(g) states:

"Other security risk. The principal administrator *may* place in administrative segregation or lock-up, in the inmate's own cell, any inmate or group of inmates if such inmate or inmates are engaging in behavior which threatens the maintenance of security or control in the correctional facility. In such cases, the principal administrator *shall*, in writing, explain, for the record, the threat to security and show justification for segregation or lock-up. A copy of this explanation and justification *shall* be sent immediately to the secretary of corrections." (Emphasis added.)

The regulation clearly states the warden *may* place a prisoner in administrative segregation. The regulation also states in the mandatory form ("shall") certain *procedural* safeguards.

In *Dotson*, the court ruled that to create a liberty interest, state regulations *must* use both mandatory language to limit discretion *and* require a particular result. 764 F. Supp. at 166.

The *Dotson* court also reasoned:

"Rather, the relevant regulations provide, for example, only that inmates *may* be placed in segregation where certain conditions are met, *may* be placed into greater confinement upon other specified conditions, and *may* be charged with disciplinary offenses for violations committed by an inmate while in segregation. See K.A.R. 44-14-301—44-14-317." (Emphasis added.) 764 F. Supp. at 166.

See also *Templeman v. Gunter*, 16 F.3d 367, 368 (10th Cir. 1994) (Colorado law), where the prisoner was apparently held in administrative segregation for *seven years*. The Tenth Circuit noted

Colorado regulations containing mandatory language dealt with procedural requirements. 16 F.3d at 369.

Since the prisoner was not deprived of any liberty interest, "no particular process was conditionally due or required, regardless of state law." 16 F.3d at 371. See also *Goddard v. Kansas Dept. of Corrections*, 16 Kan. App. 2d 408, 418, 824 P.2d 991 (1992) (due process requires existence of a liberty interest).

In short, our reading of relevant case law indicates that Kansas regulations concerning administrative segregation in state prisons do not contain the necessary mandatory language accompanied by the specified substantive predicates necessary for the creation of a protected liberty interest. See *Dotson*, 764 F. Supp. at 166.

Further, Graham's claims of cruel and unusual punishment and an equal protection violation were conclusory statements unsupported by any factual allegations within the petition. See *Templeman*, 16 F.3d at 371; *Swisher*, 12 Kan. App. 2d at 184.

Affirmed.