(937 P.2d 16)
No. 75,477

DEREK ANDERSON, *Appellee*, v. DAVID R. McKUNE, Warden of Lansing Correctional Facility, *Appellant*.

 Opinion
filed April 18, 1997. 

*Linden G. Appel*, deputy chief counsel, of Kansas Department of Corrections, for the appellant.

*Charles J. Cavenee*, of Legal Services for Prisoners, Inc., of Lansing, for the appellee.

Before LEWIS, P.J., KNUDSON, J. and JOHN J. BUKATY, JR., District Judge, assigned.

BUKATY, J.: Derek Anderson, an inmate in the Lansing Correctional Facility, filed a petition for writ of habeas corpus in the district court pursuant to K.S.A. 60-1501. That petition challenged a disciplinary action taken by the Department of Corrections (DOC) against Anderson. After several hearings, the trial court reversed the DOC action and prohibited the warden, David McKune, from using a certain urine test in the future as a basis for disciplinary action unless that result is confirmed in a laboratory by a gas chromatography mass spectrometry test (GC/MS). McKune appeals. We reverse.

The facts begin with a random drug test administered to Anderson. Prison officials required him to provide a urine sample. Lieutenant Michael J. Ralls tested the sample using the Roche Abuscreen On-Trak drug test (ONTRAK). The results were positive for barbiturates. Pursuant to DOC policies, another correctional officer performed a second test on the same sample, again using the ONTRAK test. Again, the results were positive for barbiturates. DOC then charged Anderson with a violation of K.A.R. 44-12-312, use of stimulants, a class I disciplinary offense.

After Anderson pled not guilty and waived his right to counsel, prison officials scheduled a hearing. Lt. Ralls testified along with Officer Robare. Lt. Ralls stated that the proper chain of custody was maintained, that he was trained and certified by Roche Labs to give and analyze the ONTRAK test, and that the sample he received from Anderson was properly sealed with the inmate's name and number. Officer Robare stated that he observed Anderson urinate into a container, he collected the same, and he wrote Anderson's name and number on the bottle. He also stated that

he observed Anderson put a seal on the bottle with his name and number. Anderson admitted giving the sample to Officer Robare but stated that Officer Robare did not give him any form to sign nor did he see Officer Robare seal the bottle with tape. The hearing officer also considered a report from Phyllis Wader, director of nursing at Prison Health Services. That report contained a list of prescribed medications given to Anderson during the 3-month period prior to the test with the notation that "none of the above medications would give a positive urine [test] for barbiturates." In his closing argument, Anderson argued there was nothing to show that the urine sample was his and that he had requested an independent test and offered to pay for the same.

The hearing officer found Anderson guilty of the disciplinary violation. He specifically found there was a proper chain of custody and sufficient evidence to establish that the sample came from Anderson. He then imposed 7 days of disciplinary segregation which he suspended for 6 months, a $20 fine, and a restitution order of $5.32.

Anderson then exhausted the administrative appeal process. The institution's disciplinary board approved the discipline and the Secretary of Corrections upheld that approval.

Anderson then filed his pro se petition in the district court. The court appointed counsel to represent him. At the first hearing, Anderson's attorney argued that he was challenging the discipline on three grounds: (1) that the reporting officer failed to establish chain of custody of the urine sample; (2) that due process requires that the prison allow an inmate to get an independent test to prove his or her innocence; and (3) that the inmate had the right to counsel or substitute counsel. At the conclusion, the trial court ruled that Anderson had failed to exhaust administrative remedies as to the claim of right to counsel or counsel substitute, that the record supported the hearing officer's determination that there was a proper chain of custody, and that the urine sample tested was Anderson's. In addressing the drug testing procedures on inmates, however, the court set another hearing and ordered the parties at that hearing to provide evidence as to the adequacy of the testing procedure. The trial court expressed some doubts about the pro-

cedure used and stated that the respondent had the burden to establish reliability.

The trial court then heard evidence on two subsequent occasions relative to its concerns. At one hearing, the parties made a record as to how the ONTRAK drug test works. ONTRAK uses a latex agglutination immunoassay technique to test for barbiturates: A urine sample is mixed with an antibody reagent and other reagents on the test slide. If no barbiturate levels are detected in the urine sample, the latex reagent forms large particles by binding to the antibodies in the test unit and the smooth milky appearance of the mixture is changed to include white particles. If sufficient barbiturate levels are in the urine sample, the conjugation is prevented and the mixture's appearance remains unchanged. Both sides also presented expert scientific witnesses who gave their opinions about the reliability of the ONTRAK test.

At the conclusion of this hearing, the trial court stated its ruling. In its remarks, the trial court focused on the FDA "black box warning" and various notations throughout the scientific literature which identified ONTRAK as a preliminary test or a test that should be confirmed with a GC/MS test. This is a test done in a laboratory setting by skilled technicians, and both sides agree it is very reliable. The court also gave weight to the fact that the prison system and Roche, both of which use ONTRAK to test their own employees, confirmed any positive tests in these instances with the GC/MS. The court also noted that the DOC did not contact Roche to determine if any of the medications Anderson was taking could have caused a false positive result. Finally, the court weighed the subjective nature of the test—did the mixture's appearance remain milky or was it lumpy? The court concluded the medical community required a confirmation test and that outweighed the other evidence as to ONTRAK's reliability.

The trial court reversed Anderson's disciplinary violation and prohibited the DOC from relying exclusively on positive ONTRAK test results when disciplining inmates without confirmation by GC/MS. McKune filed a timely notice of appeal from that decision.

An inmate's claim under K.S.A. 60-1501 must assert the deprivation of a constitutional right or the court is without jurisdiction

to consider the claim. In the absence of such a claim, the petition should be summarily dismissed. *Ramirez v. State*, 23 Kan. App. 2d 445, Syl. ¶ 3, 931 P.2d 1265 (1997).

It is clear that being placed in disciplinary segregation does not implicate due process rights. *Davis v. Finney*, 21 Kan. App. 2d 547, 902 P.2d 498 (1995). However, in addition to Anderson being placed in disciplinary segregation, he received a small fine. The extraction of a fine does implicate the Due Process Clause even when, as here, the State has taken only a small amount from an inmate's prison account. *Longmire v. Guste*, 921 F.2d 620, 623-24 (5th Cir. 1991). We construe the petition in this case to allege a denial of due process.

The question of whether due process exists in a set of facts is a question of law. *Murphy v. Nelson*, 260 Kan. 589, 594, 921 P.2d 1255 (1996). Our review, then, is unlimited.

In turning to the merits, we first note that the trial court erred in placing the burden of proof on the respondent in this case. The law is clear that an inmate claiming violation of his constitutional rights in a habeas proceeding carries the burden of proof. *Johnson v. Stucker*, 203 Kan. 253, 260, 453 P.2d 35, *cert. denied* 396 U.S. 904 (1969); *Walling v. Francisco*, 22 Kan. App. 2d 588, 590, 920 P.2d 466 (1996). We will review the record to determine if Anderson met that burden.

We must determine whether the drug testing procedure used comported with due process standards. The respondent argues that the proper standard of review was provided by *Superintendent v. Hill*, 472 U.S. 445, 86 L. Ed. 2d 356, 105 S. Ct. 2768 (1985), as adopted by *Shepherd v. Davies*, 14 Kan. App. 2d 333, 789 P.2d 1190 (1990). We agree.

In *Hill*, the Supreme Court established the standard of review to be applied in a case of this nature:

"We hold that the requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if 'there was *some evidence* from which the conclusion of the administrative tribunal could be deduced . . .' [Citation omitted.] Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the

evidence. Instead, the relevant question is whether there is *any evidence in the record* that could support the conclusion reached by the disciplinary board. [Citations omitted.]" (Emphasis added.) 472 U.S. at 455-56.

In applying this "some evidence" standard, the Court found that due process did not require evidence that "logically preclude[d] any conclusion but the one reached by the disciplinary board." 472 U.S. at 457. The Court found that "[a]lthough the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." 472 U.S. at 457.

Under the *Hill* standard, the trial court here was required to uphold the disciplinary action against Anderson as long as there was "some evidence" to support the hearing officer's determination that Anderson violated the drug regulations. We apply the same standard.

Does the record support the trial court's conclusion that the ONTRAK drug tests were not sufficiently reliable to meet due process standards? We believe the answer is no.

The trial court heard expert testimony concerning the reliability and unreliability of the ONTRAK drug test. While it made no findings on which witness it found more credible, the court did observe there was "some evidence" of the test's reliability. The inquiry should have ended at that point.

This court addressed this exact test in *Crutchfield v. Hannigan*, 21 Kan. App. 2d 693, 906 P.2d 184 (1995). In *Crutchfield*, an inmate challenged prison officials' random urine tests using the ONTRAK test. Crutchfield filed a petition under K.S.A. 60-1501, claiming that the urine immunoassay test used was unreliable. The trial court dismissed the petition as frivolous. We affirmed. 21 Kan. App. 2d at 694. We also noted that similar urinalysis testing procedures have repeatedly been found to satisfy constitutional standards and that the test was sufficiently reliable.

Numerous other courts have found that enzyme immunoassay tests are sufficiently reliable in testing prison inmates for drug usage to meet the standards of due process. See, *e.g., Higgs v. Bland,*

888 F.2d 443, 449 (6th Cir. 1989) (upholding disciplinary violations based upon EMIT double testing); and *Spence v. Farrier*, 807 F.2d 753, 756 (8th Cir. 1986) (citing numerous cases upholding disciplinary actions based upon double EMIT tests as meeting due process standards even if inmates cannot call expert witnesses or have a confirmatory test by alternate methodologies).

In recognizing the reliability of enzyme immunoassay tests, these courts have noted that requiring prison officials to allow inmates to routinely challenge the reliability of such tests "would seriously interfere with the institutional goal of drug deterrence and prompt resolution of drug related infractions." *Spence v. Farrier*, 807 F.2d at 756. They have also noted that although such tests are not 100% reliable and could result in an inmate being unjustly disciplined, "the margin of error is insignificant in light of institutional goals" and the State should not be required to provide "all possible procedural safeguards against erroneous deprivation of liberty." 807 F.2d at 756. This is consistent with the United States Supreme Court decisions holding that "the Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectable 'property' or 'liberty' interest be so comprehensive as to preclude any possibility of error." *Mackey v. Montrym*, 443 U.S. 1, 13, 61 L. Ed. 2d 321, 99 S. Ct. 2612 (1979).

Anderson argues that we should employ the "clear and convincing" evidence standard found in K.A.R. 44-13-409. We do not agree.

Clearly, disciplinary actions at state prisons are not subject to review under the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq*. See K.S.A. 77-603(c)(2). Likewise, the regulations of the DOC contemplate that the Secretary's decision upon review of a disciplinary action is final. K.A.R. 44-13-702. Also, as a general rule, the courts in this state have given broad deference to prison officials in maintaining discipline in prison settings:

"It should be emphasized that prison officials as executive officers of the state are charged with the control and administration of the penal institutions of the state and as such are vested with wide discretion in the discharge of their duties.

Under familiar rules, that discretion should not be interfered with by the courts in the absence of abuse or unless exercised unlawfully, arbitrarily or capriciously. Maintenance and administration of penal institutions are executive functions and it has been said that before courts will interfere *the institutional treatment must be of such a nature as to clearly infringe upon constitutional rights, be of such character or consequence as to shock general conscience or be intolerable in fundamental fairness.* It has further been said that the 'hands-off' doctrine operates reasonably to the extent it prevents judicial review of deprivations which are necessary or reasonable concomitants of imprisonment [citation omitted]. In other words, disciplinary measures properly administered in accord with reasonable prison regulations are not subject to judicial review." (Emphasis added.) *Levier v. State,* 209 Kan. 442, 450-51, 497 P.2d 265 (1972).

See *Graham v. Nelson,* 20 Kan. App. 2d 896, 897, 893 P.2d 294 (1995).

As indicated earlier, review of prison disciplinary cases by the courts of this state is done under the "some evidence standard" established in *Hill,* 472 U.S. at 455-56. We reject the argument that we must apply a "clear and convincing" standard in cases of this nature.

We hold that a habeas corpus petition seeking judicial review of the sufficiency of the evidence in a prison disciplinary proceeding should be dismissed unless the petition clearly raises issues rising to the level of a constitutional violation. Further, claims of a constitutional violation must be summarily dismissed if there is "some evidence" to support the conclusion reached by the disciplinary board.

Anderson argues in his brief that prison officials did not follow several other of their regulations dealing with procedures they must follow in the conduct of disciplinary hearings. Specifically, he argues that the hearing officer allowed rebuttal evidence when it should not have been allowed, that witnesses were called that were not listed as required, that he was denied the right to cross-examine witnesses, and that unreliable and irrelevant evidence was received.

We fail to find in the record that the district court addressed these issues. The only basis we find for its ruling was its determination that the ONTRAK test was unreliable.

Whether the trial court addressed these arguments, we believe that Anderson has failed to establish that any of these so-called

failures of the prison officials to follow their own rules has denied him due process. The mere fact that a hearing officer in a prison discipline case has not followed DOC procedural regulations does not of itself violate fundamental fairness that rises to an unconstitutional level. Without much more, a petition for habeas corpus alleging procedural errors at a prison disciplinary hearing must fail. As a general rule, prison officials are given flexibility in executing internal prison policies and procedures which are designed to preserve internal order and discipline.

We are convinced that the record contains "some evidence" to support the disciplinary action here. Anderson has failed to carry his burden to establish a violation of his constitutional rights to due process.

Reversed.