NOT DESIGNATED FOR PUBLICATION

No. 113,246

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WILLIAM HARRIS,
*Appellant*,

v.

RAY ROBERTS, *et al.,*
*Appellees*.


MEMORANDUM OPINION

Appeal from Ellsworth District Court; RON SVATY, judge. Opinion filed September 18, 2015.
Affirmed.

*Donald E. Anderson II*, of Robert A. Anderson Law Office, of Ellinwood, for appellant.

*Robert E. Wasinger*, of Department of Corrections, for appellee.


Before MALONE, C.J., ARNOLD-BURGER, J., and JOHNSON, S.J.

*Per Curiam*:  During a random search, a security officer at the Lansing Correctional Facility (Lansing) saw inmate William Harris drop a sock into a nearby coat. The sock contained a cell phone and charger, and Harris—who insisted that the cell phone did not belong to him—was sanctioned. Harris appealed to the Secretary of Corrections (Secretary), who approved the disciplinary action. He then filed a habeas corpus petition with the district court, arguing that insufficient evidence supported the sanction and that his due process rights had been violated. The district court denied his petition, and he now appeals. Finding no error, we affirm.

1

In March 2013, while incarcerated at Lansing, Harris left the day room and headed into a bunk area—not his own—to wake up inmate Eric Rhymes. His entry into the bunk area happened to coincide with a security team arriving to conduct a random search. One of the security officers, Officer Gift, witnessed Harris standing in "a blind spot between the wall and the lockers." As Gift watched, Harris dropped a sock into a nearby coat. The sock contained a flip-style cell phone and a charger. The disciplinary report memorializing this incident accused Harris of possessing an unauthorized communication device and trafficking in contraband in a correctional facility.

At a subsequent disciplinary hearing, Harris claimed he was "[s]tanding over Rhymes" when Gift entered the bunk area. Rhymes insisted that the cell phone did not belong to Harris, and former inmate Theodore McAdams submitted a written statement claiming that "Harris had no idea, that there was a cell phone in the [bunk area]." However, neither Rhymes nor McAdams claimed ownership of the phone. The hearing officer viewed the surveillance footage and discovered that Gift entered the bunk area in question empty-handed but left with "a white sock hanging out of [the] leg pocket of his pants."

At one point during the hearing, Harris requested a continuance to speak to two other individuals. When the hearing officer asked why, Harris responded, "It seems all the evidence is being denied." Harris also wanted to know what specific video footage the hearing officer reviewed. But the hearing officer denied the continuance as Harris had seen all the other evidence, was not authorized to view the video, and "had plenty of time to prepare a defense."

The hearing officer ultimately determined that Harris was in possession of an unauthorized communication device and found Harris guilty of the violations. Harris

received two sanctions:  one in which he received 30 days' disciplinary segregation, 60 days' restriction from privileges, a $20 fine, and a loss of 60 days of good time credit, and another that was identical less the loss of good time credit. The warden approved the disciplinary action.

Harris appealed to the Secretary, arguing both that his constitutional rights were violated when the hearing officer refused his continuance and that insufficient evidence supported the disciplinary violation. After reviewing Harris' case, the Secretary determined that the hearing officer complied with the appropriate standards and procedures and that the decision was adequately supported by the evidence. As such, the Secretary approved the decision.

Having exhausted his administrative remedies, Harris then filed a habeas corpus petition with the district court. Harris alleged that during the disciplinary hearing, his due process rights were violated when the hearing officer:  (1) limited his right to call witnesses; (2) excluded portions of cross-examination from the hearing record; (3) denied him a continuance to interview other witnesses; and (4) refused to allow him to review security footage. Harris also claimed that insufficient evidence supported the disciplinary action, as "there was no way for [him] to traffic any . . . telephone" in the facility. The Secretary moved to dismiss the petition, arguing both that sufficient evidence supported the action and that Harris received sufficient process.

At a hearing, the Secretary—after conceding that Harris' fines and loss of good time credit implicated due process—argued that Harris received a fair and impartial hearing. According to the Secretary, Harris received written notice of the charges, an opportunity to prepare a defense, and a chance to present evidence. The decision to grant or deny the continuance, the Secretary argued, laid within the hearing officer's discretion, which the officer did not abuse. Regarding the video evidence, the Secretary observed that K.A.R. 44-13-403(l)(1) expressly forbids inmates from viewing security footage. The

3

Secretary therefore urged the district court to uphold the disciplinary action on both due process and evidentiary grounds.

Harris, on the other hand, renewed his contention that he was denied due process because he was not permitted to view the security camera footage to ensure it was the right footage and because he was unable to call all the witnesses he wanted.

Having heard all the arguments, the district court granted the Secretary's motion and dismissed the petition. The district court reasoned that Harris received sufficient process and that the disciplinary record contained at least some evidence to support the hearing officer's decision. The district court also noted that it was "probably the most thorough disciplinary hearing record I have seen."

Harris timely appealed.

ANALYSIS

*Sufficient evidence supported the disciplinary action.*

On appeal, Harris first argues that the evidence presented at the hearing was insufficient to prove he possessed and trafficked an unauthorized cell phone while at Lansing. Harris essentially contends that the hearing officer disregarded his testimony as well as Rhymes' and McAdams' statements.

Here, the district court conducted a hearing rather than summarily dismissing Harris' petition. As such, this court must determine whether the district court's factual findings are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Those legal conclusions, however, are subject to unlimited review. *Rice v. State*, 278 Kan. 309, 320, 95 P.3d 994 (2004).

4

When a prisoner in a disciplinary proceeding challenges the sufficiency of the evidence, the decision will be upheld "if there was some evidence from which the conclusion of the administrative tribunal could be made." *Washington v. Roberts*, 37 Kan. App. 2d 237, 246, 152 P.3d 660 (2007). A reviewing court need not examine the whole record, assess witness credibility, or weigh the evidence; instead, it simply must decide "whether there exists any evidence in the record to support the conclusion reached by the disciplinary board." 37 Kan. App. 2d at 246. Under this standard, even "meager" evidence can support the disciplinary board's findings provided that "'the record is not so devoid of evidence that the findings . . . were without support or otherwise arbitrary.'" *Anderson v. McKune*, 23 Kan. App. 2d 803, 808, 937 P.2d 16, *rev. denied* 262 Kan. 959, *cert. denied* 522 U.S. 958 (1997).

The Secretary compares the facts in this case to *Blanchette v. Werholtz*, No. 101,969, 2009 WL 2506280 (Kan. App. 2009) (unpublished opinion), and the two cases are not without their similarities. There, the inmate received a disciplinary report and sanctions after officers discovered a large shank in his room. The inmate claimed that the shank was actually found in a common area accessible to many other inmates. After the inmate exhausted his administrative appeals, the district court granted his habeas corpus petition based on his argument that he lacked exclusive control of the area where the shank was found.

On appeal, however, this court reversed. 2009 WL 2506280, at *2-3. Reasoning that the evidentiary standard for disciplinary proceedings is a low one, this court reviewed the evidence and determined that because the shank was concealed in a chair that had been in that inmate's room for some time, some evidence of his guilt existed. 2009 WL 2506280, at *3. Moreover, the inmate in question presented no evidence demonstrating others' access to his cell and chair. In short, the limited evidence in the record was sufficient to support the inmate's disciplinary violation.

5

Here, like in *Blanchette*, Harris stresses that the phone was found in a bunk area not his own and that other inmates—such as those assigned to that particular bunk—had access to the area where Gift discovered the sock and phone. He also observes that he and the other inmates denied his knowledge of the phone. But Harris also recognizes that Gift's testimony indicating that he personally saw Harris drop the sock into the coat is sufficient to sustain the disciplinary violation. Although Rhymes and McAdams testified otherwise, Gift's clear statement that he saw Harris try to hide the sock is some evidence of the violation. Accordingly, we find that sufficient evidence exists in the record to support the conclusion reached by the Secretary.

*Harris' due process rights were not violated.*

Harris also argues that his due process rights were violated. Specifically, Harris alleges that the hearing officer abridged his rights to call witnesses and present evidence by denying him his continuance and refusing him access to the video footage.

The issue of whether due process has been afforded is a question of law over which this court exercises unlimited review. *Hogue v. Bruce*, 279 Kan. 848, 850, 113 P.3d 234 (2005). When, as here, an inmate raises an issue of procedural due process, this court engages in a two-step analysis. First, the court must determine whether the State deprived that inmate of life, liberty, or property. 279 Kan. at 850-51. Only if those rights are implicated must the court determine "the extent and nature of the process which is due." 279 Kan. at 851.

Here, the Secretary concedes that the fines and loss of good time credit Harris suffered implicate his due process rights. This position is supported by our Kansas caselaw. See 279 Kan. at 851 (loss of good time credit); *Anderson*, 23 Kan. App. 2d at 807 (fines). The question, then, is whether the hearing officer deprived Harris of due process.

6

It is well-settled Kansas law that in disciplinary proceedings

> "the full panoply of rights due a defendant in criminal proceedings do not apply. An inmate's limited rights in a prison disciplinary proceeding include an impartial hearing, a written notice of the charges to enable the inmate to prepare a defense, a written statement of the hearing officer's findings as to the evidence and the reasons for the decision, and an opportunity to call witnesses and present documentary evidence." *Washington*, 37 Kan. App. 2d 237, Syl. ¶ 3.

Harris' argument centers on the deprivation of his right to call witnesses and present documentary evidence. Harris essentially contends that the hearing officer limited this right by not granting him a continuance and not allowing him to view the video footage.

The administrative regulations controlling prison disciplinary procedures provide that a "hearing officer may grant one or more continuances" upon request by the inmate, reporting officer, or other entities involved in the disciplinary process. K.A.R. 44-13-402(a). That said, this regulation provides the hearing officer broad discretion when granting or denying the request. *Leek v. Werholtz*, No. 97,498, 2007 WL 2377284, at *3 (Kan. App. 2007) (unpublished opinion). Here, Harris requested a continuance in the middle of the hearing because he wanted to talk to two other individuals. But Harris also never requested them as witnesses prior to the hearing. Moreover, when pressed for details about the continuance, Harris focused not on his need to interview these individuals but on the video footage and the evidence as a whole, saying that he felt as though "all the evidence is being denied" and that he wanted to know which video the hearing officer viewed. Having heard this explanation, the hearing officer denied the continuance.

Nothing in the record suggests that this denial falls outside the broad discretion afforded hearing officers when granting continuances. Harris asked for the continuance

after the hearing started, claiming he needed to speak to two individuals he never named as potential witnesses until that time. He provided no real explanation as to what information those two witnesses might provide or how their testimony would be necessary to his defense. In short, the hearing officer's action was not arbitrary, fanciful, or unreasonable and therefore did not violate Harris' due process rights. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013) (defining abuse of discretion).

As for the issue concerning the video footage, the inmate in *Requena v. Cline*, No. 108,395, 2013 WL 1876471, at *3 (Kan. App.) (unpublished opinion), *rev. denied* 298 Kan. 1203 (2013), raised much the same argument. There, the inmate asked to view video footage from a certain incident, but that request was denied. He appealed, arguing that the State's continued refusal to produce the video violated his due process rights. In finding that no such violation occurred, this court noted that K.A.R. 44-13-403(l)(1) expressly provides that "'the accused inmate shall not be present when the hearing officer reviews any facility security videotape evidence.'" 2013 WL 1876471, at *1. The court categorized this regulation as "a reasonable rule," as an inmate's "[k]nowledge of what areas are covered or not covered by the cameras could be used to facilitate violence towards prisoners or personnel." 2013 WL 1876471, at *3. We agree.

Here, the hearing officer personally viewed the footage outside of Harris' presence, recorded a general description of what he saw, and explained that description to Harris. As prison regulations restrict Harris' access to such footage, the hearing officer's characterization of the video is the most that is available to him. Moreover, the fact that the regulations forbid Harris from watching the video further demonstrates why the hearing officer acted within his broad discretion when denying Harris' continuance. After all, Harris—at least in part—requested the continuance to learn more about what footage the hearing officer viewed. But as Harris could not himself view the video, a continuance to investigate the exact footage in question would have been futile.

In short, the Secretary provided Harris notice of the charges against him, an opportunity to prepare a defense, a written statement of the hearing officer's final findings, and a chance to call witnesses and present evidence. Nothing in the record suggests that the hearing officer acted with partiality or otherwise abridged Harris' rights. Accordingly, the district court's decision is affirmed.

Affirmed.