NOT DESIGNATED FOR PUBLICATION

No. 114,585

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ANDREW CONKLIN,
*Appellant*,

v.

JAMES HEIMGARTNER,
*Appellee*.


MEMORANDUM OPINION

Appeal from Butler District Court; JOHN E. SANDERS, judge. Opinion filed August 5, 2016.
Affirmed.


*Nancy Ogle*, of Ogle Law Office, of Wichita, for appellant.


*Michael J. Smith*, of Kansas Department of Corrections, for appellee.


Before MALONE, C.J., GREEN and GARDNER, JJ.


*Per Curiam*:  This case concerns a prison disciplinary action against Andrew
Conklin for a violation of a prison rule that prohibits the misuse of medication. At his
disciplinary hearing, Conklin presented evidence that his cellmate, who was also charged,
admitted sole responsibility for the violation. But the officer who witnessed the incident
identified Conklin as the person who threw his cellmate's medication under their cell
door. The hearing officer found Conklin guilty and assigned a fine and 30 days of
disciplinary segregation. Conklin appealed to the Secretary of Corrections (Secretary).
After the Secretary upheld the hearing officer's decision, Conklin petitioned the trial court

1

for habeas relief under K.S.A. 2015 Supp. 60-1501 (K.S.A. 60-1501 petition). Finding no reversible error, we affirm.

On February 22, 2015, Officer A. Randolph, a prison guard at El Dorado Correctional Facility (EDCF), charged cellmates Andrew Conklin and Mark Baker with violating K.A.R. 44-12-312(b) (2009). That regulation prohibits, in pertinent part, prisoners' misuse of authorized or prescribed medication. As support for the charges, Randolph recited the following underlying facts in both inmates' disciplinary reports:

> "On 2/21/2015 at approx. 1355 hrs. I, CSI A. Randolph was informed by COI Markham in L control that something had just been thrown out from under the door of cell 206 and another offender was [trying] to go pick it up. At that time, I went up to cell 206 and saw a brown paper towel and a white pill laying on the run. I picked up the paper towel and found 3 more white pills inside it. On 2/22/2015, offender Baker told me the pills were his and that he was trying to help someone out because they were in pain."

The report listed Markham as the sole staff witness.

During Conklin's 2-day disciplinary hearing, the hearing officer (Johnson) heard conflicting evidence about who threw the pills. On the first day of testimony, Conklin, Baker, and Randolph each reiterated Baker's acceptance of full responsibility. The next day, however, Markham testified that he saw Conklin bend down and throw the paper towel under the cell door and then stand back up.

Johnson found Conklin guilty and sanctioned him with 30 days of disciplinary segregation and a $20 fine. The warden approved Johnson's decision.

In Conklin's ensuing challenges to Johnson's decision, he alleged that Johnson exhibited bias and violated his due process rights during his disciplinary hearing in various ways. For example, Conklin suggested in a Form 9 inquiry that Johnson was

2

required under K.A.R. 44-13-403(e) (2009) (KS ADC 44-13-403) to dismiss the charge against Conklin given Baker's confession. Johnson responded that dismissal was not warranted. In Conklin's appeal to the Secretary, he accused Johnson of bias for not dismissing the charge in light of Baker's confession, for refusing Conklin's request to see the evidence against him, and for not questioning Markham's credibility given the surrounding circumstances. The Secretary affirmed Conklin's conviction, finding Johnson substantially complied with prison rules and some evidence supported his decision. In his K.S.A. 60-1501 petition that is the subject of this appeal, Conklin again alleged Johnson did not follow the rules and his conviction must be set aside because the preponderance of the evidence showed Baker threw the pills under the cell door, not Conklin.

The trial court summarily dismissed Conklin's K.S.A. 60-1501 petition. In support, the trial court checked a box on the form order that stated: "Disciplinary segregation, in itself does not implicate constitutional rights. The Court sees no violation of protected liberty interests. There's nothing atypical about petitioner's confinement." Next to that, the court also handwrote: "Court will not retry the facts. Some evidence supports conviction, in fact more than that. No cognizable claim." In his motion to reconsider the dismissal, Conklin alleged for the first time that Johnson had failed to provide written findings of the reason for his decision. Specifically, Conklin alleged that Johnson needed to explain why he believed Markham instead of what Conklin considered to be "overwhelming" evidence of his innocence. The trial court summarily denied that motion, too. This time the trial court wrote: "written [disciplinary report] constitutes 'some evidence.' Court will not retry facts." On appeal, Conklin contends that the trial court erred in summarily dismissing his K.S.A. 60-1501 petition in two ways.

Before addressing Conklin's specific arguments, a brief review of the general law governing K.S.A. 60-1501 petitions filed by inmates is warranted. To avoid summary dismissal of his K.S.A. 60-1501 petition, Conklin is required to allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v.*

3

*State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). This court will affirm the summary dismissal of an inmate's petition only if, "on the face of the petition, it can be established that [the inmate] is not entitled to relief, or if, from undisputed facts, or from uncontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists." 289 Kan. at 648-49. See K.S.A. 2015 Supp. 60-1503(a) (upon filing of K.S.A. 60-1501 petition, trial court must "promptly" review and "dissolve" petition where "it plainly appears from the face of the petition and any exhibits attached thereto that the plaintiff is not entitled to relief in the district court").

In determining whether Conklin satisfied this pleading burden, this court considers whether the facts alleged in Conklin's petition, when accepted as true, and all their inferences state a claim not only on the theories set forth by Conklin, but also on any possible theory. See *Washington v. Roberts*, 37 Kan. App. 2d 237, 240, 152 P.3d 660 (2007) (citing *Hill v. Simmons*, 33 Kan. App. 2d 318, 320, 101 P.3d 128 [2004]). An appellate court exercises unlimited review of a summary dismissal. *Johnson*, 289 Kan. at 649.

*Did Conklin State a Valid Due Process Claim Based on Various Failures to Follow Rules and Regulations That Govern Prison Disciplinary Actions?*

Conklin first contends that the trial court erred in summarily dismissing his K.S.A. 60-1501 petition because he stated a valid due process claim based on various failures to comply with rules and regulations that govern prison disciplinary actions. Whether due process has been afforded presents a question of law subject to unlimited review by this court. *Washington*, 37 Kan. App. 2d at 240.

Deciding whether a prisoner has stated a claim for a violation of his or her procedural due process rights involves two steps. First, this court must determine whether the State deprived the prisoner of life, liberty, or property. If so, then this court

4

determines "the extent and nature of the process which is due." *Hogue v. Bruce*, 279 Kan. 848, 850-51, 113 P.3d 234 (2005).

The parties agree that the first step was satisfied here because of the $20 fine imposed. See *Washington*, 37 Kan. App. 2d at 240 ("[T]he extraction of a fine implicates the Due Process Clause of the Fourteenth Amendment to the United States Constitution even when only a small amount has been taken from an inmate's account."). To the extent the trial court suggested otherwise by checking the box on its initial form order, it erred.

Moving on to determine the extent and nature of the process due to Conklin in the disciplinary proceedings, it should be noted that "[d]ue process '"is not a technical conception with a fixed content unrelated to time, place, and circumstances."'" *Hogue*, 279 Kan. at 851. Courts have recognized that a prisoner's limited due process rights during a disciplinary proceeding include:

> "'an impartial hearing, a written notice of the charges to enable inmates to prepare a defense, a written statement of the findings by the factfinders as to the evidence and the reasons for the decision, and the opportunity to call witnesses and present documentary evidence.' [*In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 627, 24 P.3d 128 (2001)]." *Hogue*, 279 Kan. at 851.

See also K.A.R. 44-13-101(c) (detailing these due process rights in summarizing prison disciplinary procedures); accord *Wolff v. McDonnell*, 418 U.S. 539, 553-56, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) (recognizing need for "mutual accommodation between institutional needs and objectives" and prisoner's rights in holding "the full panoply of rights due a defendant in [criminal] proceedings does not apply"). Conklin's argument here is two-fold.

5

*(1) Johnson's failure to provide reasons for his decision*

Conklin first contends that Johnson's failure to provide reasons for his decision violated his due process rights. This argument ties into the United States Supreme Court's explanation for the necessity of written records of prison disciplinary actions:

> "[A]ctions taken at [disciplinary] proceedings may involve review by other bodies. . . . Written records of proceedings will thus protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others." *Wolfe*, 418 U.S. at 565.

Conklin summarily contends that Johnson's failure to provide a written statement of the reasons for his finding of guilt placed him at "a severe disadvantage" in propounding his cause or defending himself, "[e]specially where the evidence against him is virtually non-existent." The warden did not respond to this particular due process claim.

Granted, Conklin correctly points out that Johnson did not specifically state the reasons for his decision. Rather, on the line meant for a hearing officer's designation of the reason for disciplinary sanctions, Johnson wrote only "sent guidelines," presumably referring to the permissible sanctions for violating K.A.R. 44-12-312. See K.A.R. 44-12-312(e) (violation of regulation is class I offense); K.A.R. 44-12-1301(b) (detailing permissible penalties for class I offense). Nevertheless, Conklin clearly understood, and this court can readily deduce from Johnson's written findings about the conflicting testimony: Johnson believed Markham's testimony that Conklin, not Baker threw the pills under the cell door. Conklin, however, alleges in his K.S.A. 60-1501 petition that

6

"[m]erely stating 'I saw you throw a brown paper towel under your door is not "proof" of "specific facts."'" Conklin also highlights contradictions between Markham's testimony and the other evidence. As a result, we conclude that Conklin had notice of the reasons for Johnson's decision.

In sum, the uncontrovertible facts in the record show that no cause exists for granting a writ as a matter of law based on Conklin's allegation that he was deprived of due process based on Johnson's failure to state the reason for his decision. Thus, he is not entitled to relief on that claim.

*(2) Johnson's failure to follow prison policies and procedures*

Turning now to Conklin's second argument, we note that he contends that Johnson failed to follow prison policies and procedures, which deprived him of his right to due process.

As this court has explained:

"[T]he fact that the hearing officer failed to comply with [a prison] regulation does not in itself establish a due process violation. Quoting *Anderson* [*v. McKune*], 23 Kan. App. 2d [803], 811[, 937 P.2d 16, *rev. denied* 262 Kan. 959, *cert. denied* 522 U.S. 958 (1997)], our Supreme Court in *Hogue* stated the following:

"'"The mere fact that a hearing officer in a prison discipline case has not followed DOC procedural regulations does not of itself violate fundamental fairness that rises to an unconstitutional level. Without much more, a petition for habeas corpus alleging procedural errors at a prison disciplinary hearing must fail."' 279 Kan. at 855-56." *Washington*, 37 Kan. App. 2d at 242.

According to Conklin, he was deprived of due process based on three violations of prison rules and regulations.

First, Conklin contends that Johnson failed to follow an internal policy that regulates the discovery of contraband at EDCF. More specifically, Conklin complains that Johnson failed to follow a prison policy that provides:

> "Items found in common areas which are routinely accessible to multiple offenders shall not be the basis for disciplinary action without an offender's admission that is judged credible by a hearing officer or proof of specific facts tying the contraband to an individual offender or group of offenders. This would include items found outside of an identified offender's area of personal control in a dormitory cubicle or multi-occupant setting." Internal Management Policies and Procedures (IMPP) 09-122.

Conklin contends that the discovery of the pills in a common area outside of his cell would "[n]ormally" require specific facts tying the contraband to Conklin to convict him. Conklin suggests, however, that Baker's confession and proof that the medication was his somehow precludes prison officials from disciplining Conklin for the incident even if there were also facts tying Conklin to the contraband. We reject Conklin's argument for at least two reasons.

First and foremost, the facts here do not implicate IMPP 09-122. Although the pills ultimately ended up in a common area, Conklin was convicted for physically throwing the pills under his cell door. The pills were obviously in Conklin's "area of personal control" at the time. That they ultimately ended up in a common area does not matter.

Second, even if IMPP 09-122 was implicated because Baker was also in the cell at the time, Conklin's argument misreads its requirements or takes them out of context. As long as there are specific facts tying the contraband to an individual offender or group of

8

offenders—which there was here in Markham's testimony that he saw Conklin throw the pills under the door—then the items found in the common area can serve as the basis for a disciplinary action. That the evidence might also point to another inmate presents only a fact question to be resolved by the hearing officer; it does not preclude the charge as a matter of law. As the warden points out in responding to Conklin's separate challenge to the sufficiency of the evidence, the separate charges for "misusing" medication stemmed from: (1) Baker's willingness to pass his prescribed medication to another prisoner; and (2) Conklin's physical passing of that medication to the other, unnamed prisoner—both of which are actions that constitute the "misuse" of medication in violation of K.A.R. 44-12-312(b)(1)(B). Thus, Conklin did not state a proper due process claim based on Johnson's failure to comply with IMPP 09-122.

Although Conklin suggests that Johnson was required but failed to dismiss the case against Conklin because Baker confessed, Conklin has not developed this argument in his brief. As a result, we decline to reach the merits of this argument. See *Manco v. State*, 51 Kan. App. 2d 733, 740, 354 P.3d 551 (2015), *rev. denied* ___ Kan. ___ (March 31, 2016) (quoting *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 15, 61 P.3d 68 [2002] in recognizing "'[s]imply pressing a point without pertinent authority, or without showing why it is sound despite a lack of supporting authority, is akin to failing to brief an issue'").

Finally, Conklin contends that Johnson refused to show Conklin the evidence supporting his conviction. Conklin has not developed this argument in his brief on appeal, either. Nevertheless, in his K.S.A. 60-1501 petition, Conklin alleges that K.A.R. 44-13-403(l)(2)(A) obligated Johnson to either show him the evidence directly or at least show him pictures. That regulation governs how a disciplinary hearing shall proceed, beginning with the prosecution's presentation of evidence, which "the defense shall be permitted to cross-examine" except for reasons not applicable here. K.A.R. 44-13-

9

403(l)(2)(A). Conklin, however, states that Johnson denied his request to see the evidence against him on February 25, 2015—the second day of his disciplinary hearing.

This is the only due process violation alleged by Conklin in his first issue to which the warden responds. The warden interprets this argument to refer to new evidence that Conklin submitted for the first time in the trial court, after he filed his K.S.A. 60-1501 petition. That evidence consists of an affidavit from another inmate, Cory Calkins. According to the affidavit, Calkins was in a cell near Conklin's when Johnson conducted the disciplinary hearing outside of Conklin's cell. Calkins overheard Johnson ask Conklin what his defense was, to which Conklin replied that the case should be dismissed because Baker confessed. Calkins further asserted in his affidavit that when Conklin asked to see the evidence against him, Johnson responded no, telling Conklin, "'if you don't like it, file it in you[r] appeal.'" The warden asserts that Conklin first raised this issue in his motion to reconsider the trial court's summary denial of his K.S.A. 60-1501 petition and summarily contends that Johnson's "alleged comment about [Conklin's] right to appeal his findings do not rise to a constitutional violation."

We conclude on the undisputed facts in the record that this contention does not state an actionable due process violation. By citing to K.A.R. 44-13-403(l)(2)(A), Conklin seems to allege he was deprived of the right to see the evidence against him before he had to come forward with evidence under K.A.R. 44-13-403(l)(2)(B). Yet, Conklin alleges that this violation did not occur until the second day of the hearing, which is inconsistent with that contention. Even accepting as true the allegation that Johnson failed to require the prosecution to first present its evidence, as this court must, nothing about that procedural error implicates a violation of fundamental fairness that rises to an unconstitutional level.

We conclude that Conklin did not state a valid due process claim based on procedural errors at his disciplinary hearing.

10

*Does Some Evidence Support Conklin's Disciplinary Conviction?*

In Conklin's second issue on appeal, he contends that his disciplinary conviction was not supported by the evidence.

This argument is also based on Conklin's due process rights, which are satisfied as long as some evidence supports his conviction. *Washington*, 37 Kan. App. 2d at 246. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there exists any evidence in the record to support the conclusion reached by the disciplinary board." 37 Kan. App. 2d at 246. Notably, under this standard even "'meager'" evidence can support a prisoner's discipline provided that "'the record is not so devoid of evidence that the findings . . . were without support or otherwise arbitrary.'" *Anderson*, 23 Kan. App. 2d at 808.

Conklin's argument here focuses upon the trial court's reasoning for denying Conklin's challenge to the sufficiency of the evidence, that is, that *the disciplinary report* constitutes some evidence supporting Conklin's conviction. Conklin contends that this cannot be because the disciplinary report implicated only Baker. The facts in the disciplinary report as recited earlier in the factual background do not necessarily implicate Conklin. Nevertheless, we must review the entire record to determine the propriety of a summary dismissal of a challenge in a K.S.A. 60-1501 petition to the sufficiency of the evidence. Markham's testimony that Conklin threw the pills constitutes some evidence to support his conviction. As a result, summary dismissal was proper.

Affirmed.