NOT DESIGNATED FOR PUBLICATION

No. 122,689

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ORVILLE WILLIAM SIEG,
*Appellant*,

v.

JOE NORWOOD, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Norton District Court; PRESTON PRATT, judge. Opinion filed October 23, 2020.
Affirmed.

*Bradley T. Steen*, of Law Office of B. Truman Steen, LLC, of Ellsworth, for appellant.

*Robert E. Wasinger*, legal counsel, of Kansas Department of Corrections, for appellee.

Before MALONE, P.J., BUSER and POWELL, JJ.

PER CURIAM: This is an appeal by Orville William Sieg of the district court's
summary denial of his K.S.A. 2019 Supp. 60-1501 petition following a correctional
facility's finding of a disciplinary violation. Upon our review, we hold the district court
did not err and, as a result, we affirm the summary denial.

FACTUAL AND PROCEDURAL BACKGROUND

On November 14, 2019, Sieg, an inmate at the Norton Correctional Facility, was
given a disciplinary report after a search of his cell. During the search, a correctional
officer seized a lined notebook and three pieces of loose paper from Sieg's cell. The next

day, Sieg was served with a disciplinary report because "propaganda was in the body of the paperwork" which allegedly violated K.A.R. 44-12-325(c).

K.A.R. 44-12-325(c) is an administrative regulation, which provides in relevant part:  "Inmates shall not possess any item, whether in its original condition or in an altered state, associated or identified with any security threat group." A security threat group is defined as "any ongoing formal or informal organization, association, or group of three or more persons with a common name or identifying sign or symbol, but without specific approval by the warden." K.A.R. 44-12-325(c). Violation of this regulation is a class I offense. K.A.R. 44-12-325(c).

Sieg sought dismissal of the disciplinary violation and return of his papers, arguing that his paperwork did not constitute a security threat. Upon review, a Kansas Department of Corrections (KDOC) employee informed Seig that "[t]he evidence contain[ed] writings of the ideology of Sovereign Citizenship" and that "[S]overeign [C]itizenship is managed as a Security Threat Group" within KDOC. Sieg requested information regarding the rule that identifies Sovereign Citizens as a security threat group. A KDOC employee responded:  "IMPP [Internal Management Policy and Procedure] 12-105D (Security Threat Groups Identification and Management)" governs security threat identification and "[t]his IMPP is staff read only, therefore you cannot get a copy."

On November 21, 2019, a disciplinary hearing was held. A prison record states that the reporting officer and Sieg both testified at the hearing and testimony was read into the record. Following a recess, Sieg was found guilty of violating K.A.R. 44-12-325(c). He was sanctioned with 10 days of disciplinary segregation and 30 days of restrictions from privileges. Shortly thereafter, the warden reversed the 10 days of disciplinary segregation.

After the hearing, Sieg appealed to the Secretary of Corrections' Designee. On December 18, 2019, the Designee reviewed Sieg's appeal and approved the disciplinary finding and sanction, reasoning that there was "[s]ubstantial compliance with Departmental and Facility Standards and Procedures" and the "Hearing Officer's decision was based on some evidence."

Having exhausted his administrative remedies, Sieg petitioned the district court for a writ of habeas corpus, under K.S.A. 2019 Supp. 60-1501, seeking judicial review of his disciplinary violation and sanction. On January 23, 2020, the district court summarily dismissed Sieg's petition concluding:

"The sanctions imposed upon Petitioner were disciplinary segregation and restriction from privileges. These are not constitutionally protected. See *Davis v. Finney*, 21 Kan. App. 2d 547, 559 (1995). In this case the sanctions imposed did NOT deprive the inmate of a constitutionally protected liberty interest, therefore this case should be summarily dismissed."

Sieg filed a timely appeal.

ANALYSIS

Sieg raises two issues on appeal. First, he contends the district court erred by summarily denying his K.S.A. 2019 Supp. 60-1501 petition because he "suffered a First Amendment violation" and the district court failed to apply the proper test for determining whether his rights were violated. Second, Sieg asserts that "K.A.R. 44-12-325 is vague, overbroad, and violates the First Amendment." On the other hand, the Secretary of Corrections argues that the district court properly determined that the sanctions against Sieg do not rise to the level of a liberty interest and, therefore, Sieg's due process rights were not implicated.

Preliminarily, a brief summary of basic K.S.A. 2019 Supp. 60-1501 law and our appellate standard of review is appropriate. To state a claim for relief under K.S.A. 2019 Supp. 60-1501, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). "[I]f, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from undisputed facts, or from uncontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists," then summary dismissal is proper. 289 Kan. at 648-49; see K.S.A. 2019 Supp. 60-1503(a). A district court should dismiss an inmate's K.S.A. 60-1501 petition if the petitioner fails to assert a violation of a constitutionally protected interest. *Anderson v. McKune*, 23 Kan. App. 2d 803, 806-07, 937 P.2d 16 (1997).

Our court exercises unlimited review over a district court's summary denial of a K.S.A. 60-1501 petition. *Johnson*, 289 Kan. at 649. Similarly, we exercise unlimited review when considering whether an individual's right to due process under the Fourteenth Amendment to the United States Constitution has been violated. 289 Kan. at 649.

To determine whether an inmate states a due process claim, our court applies a two-step analysis. First, we determine whether the State has deprived the inmate of life, liberty, or property. If this first step is met, our court proceeds to the second step which is to determine the nature and extent of the process to which the prisoner is entitled. *Washington v. Roberts*, 37 Kan. App. 2d 237, 240, 152 P.3d 660 (2007) (citing *Hogue v. Bruce*, 279 Kan. 848, 850-51, 113 P.3d 234 [2005]).

*Summary Denial of K.S.A. 2019 Supp. 60-1501 Petition*

In his K.S.A. 60-1501 petition under the heading of "Protected Liberty Interest," Sieg complained that as a result of his disciplinary conviction he was sanctioned with

segregation time and restriction from privileges. He sought review of the prison disciplinary proceedings for violations of due process. In particular, Sieg complained that he had never been affiliated with any gang or group organization, and that he had no advance notice of what constitutes a security threat group. He questioned, "So how could I or anyone ever know that this was a violation within the facility???"

After reviewing the actual sanction imposed against Sieg, the district court determined that the inmate was not deprived of a constitutionally protected interest. On appeal, Sieg does not dispute the district court's finding that a restriction from privileges for 30 days did not implicate a protected liberty interest. As a result, this argument is abandoned. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018).

On the other hand, on appeal Sieg asserts that his due process rights were violated because the district court did not consider whether the other consequences of his disciplinary conviction—a property interest in the papers seized and a First Amendment right to freedom of speech—implicated his liberty interests. But a fair reading of Sieg's K.S.A. 60-1501 petition shows the gravamen of his complaint was his disciplinary punishment for violating K.A.R. 44-12-325(c). In particular, Sieg sought district court intervention claiming that it was unfair to punish him for violating the provisions of a rule of which he was unaware.

Under Kansas law, courts should consider the actual disciplinary sanction or punishment imposed for a violation when determining whether the State has violated an inmate's due process rights and deprived an inmate of life, liberty, or property. See *Hogue*, 279 Kan. at 851; *Ginn v. Hunt*, No. 120,004, 2019 WL 1496293, at *2 (Kan. App. 2019) (unpublished opinion) (declining to change two-step analysis and finding Kansas precedent "provides that when considering the first step—whether the State deprived the inmate of life, liberty, or property—the court should consider the actual sanction or punishment imposed for the violation"). This is because "[p]unishments never imposed

do not implicate a protected liberty interest." *Hardaway v. Larned Correctional Facility*, 44 Kan. App. 2d 504, 505, 238 P.3d 328 (2010). Our court has found indirect consequences of a prison regulation violation do not implicate an inmate's constitutional rights because the consequences are "not part of the direct sanctions imposed on [the inmate]." *Seawood v. Pryor*, No. 115,069, 2017 WL 262036, at *2 (Kan. App. 2017) (unpublished opinion).

In his briefing, Sieg does not acknowledge this precedent and fails to explain why our court should consider consequences beyond the sanctions imposed for his disciplinary violation when determining whether he has been deprived of life, liberty, or property. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019). Despite the fact that Sieg has failed to brief the issue upon which the district court ruled, we will consider the sanction actually imposed on Sieg as a result of his violation of K.A.R. 44-12-325(c) when determining whether he stated a claim for relief under K.S.A. 2019 Supp. 60-1501.

Sieg was initially sanctioned with 10 days of disciplinary segregation, but this sanction was later reversed by the warden. As noted earlier, "[p]unishments never imposed do not implicate a protected liberty interest." *Hardaway*, 44 Kan. App. 2d at 505. Still, even if the sanction was imposed, a sanction of disciplinary segregation typically does not rise to the level of a constitutionally protected liberty interest. See *Sandin v. Conner*, 515 U.S. 472, 486, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995); *Hardaway*, 44 Kan. App. 2d at 505. Our Supreme Court has specifically held that a prisoner has no protected liberty interest in remaining in the general prison population. *Murphy v. Nelson*, 260 Kan. 589, Syl. ¶ 9, 921 P.2d 1225 (1996). Thus, assuming this sanction had been imposed, it did not deprive Sieg of a constitutionally protected liberty interest.

On the other hand, Sieg was sanctioned with restriction from privileges for 30 days. But this sanction also did not implicate a protected liberty interest. Our court has repeatedly found that a restriction on privileges does not implicate a protected liberty interest because it does not represent a significant and atypical hardship in relation to the ordinary incidents of prison life. *Ramirez v. State*, 23 Kan. App. 2d 445, 447, 931 P.2d 1265 (1997); *Mitchell-Pennington v. Cline*, No. 118,701, 2018 WL 2749967, at *2 (Kan. App. 2018) (unpublished opinion). As a result, this sanction did not deprive Sieg of a constitutionally protected interest.

In summary, we find no error in the district court's summary denial of Sieg's K.S.A. 60-1501 petition. The sanction imposed on Sieg by correctional authorities did not deprive him of a constitutionally protected liberty interest.

*Constitutionality of K.A.R. 44-12-325*

For his second issue on appeal, Sieg contends that "K.A.R. 44-12-325 is vague, overbroad, and violates the First Amendment." The State does not proffer an argument about this issue. The district court did not consider the issue or make any ruling regarding whether the regulation was vague, overbroad, or violated the First Amendment. As a result, as a preliminary matter, we consider whether this issue was raised in the district court.

Ordinarily, issues not raised before the district court may not be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Moreover, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). There are several exceptions to this rule, but Supreme Court Rule 6.02(a)(5) (2020 Kan. S. Ct. R. 34) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. Our Supreme Court has held that

litigants who fail to comply with this rule risk a ruling that the issue is improperly briefed, and the issue will be deemed waived or abandoned. *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). Thereafter, our Supreme Court held that Supreme Court Rule 6.02(a)(5) would be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

Sieg does not assert an exception to this general rule, rather he contends he preserved this argument because in his K.S.A. 60-1501 petition, "he alleged violations of the First, Fifth, Eighth, and Fourteenth Amendments." Sieg argues his pro se K.S.A. 60-1501 petition should be construed "liberally and in a way to do it justice" and therefore the petition "should be construed to allege that K.A.R. 44-12-325(c) is unconstitutional." See *State v. Kelly*, 291 Kan. 563, 565, 244 P.3d 639 (2010) ("Pro se pleadings are liberally construed, giving effect to the pleading's content rather than the labels and forms used to articulate the defendant's arguments.").

Sieg's argument is not persuasive. The central complaint of his K.S.A. 60-1501 petition is that he was wrongfully punished for violating K.A.R. 44-15-325 because he was not a member of any security threat group (including the Sovereign Citizens), his writings did not constitute a security threat, and he was unaware of this particular administrative regulation. On the other hand, Sieg's K.S.A. 60-1501 petition did not assert that K.A.R. 44-15-325 was vague, overbroad, and violated the First Amendment, and in his request for relief, he did not ask for a declaration that the administrative regulation was unconstitutional. Moreover, while Sieg attached a memorandum to his petition asserting that "Violations of Amendments 1, 5, 8, and 14 have occurred," his argument consisted of simply paraphrasing those four amendments without relating them to any claim that K.A.R. 44-15-325 was unconstitutional.

Upon a liberally construed review of Sieg's petition, we do not discern an argument that K.A.R. 44-15-325 violates the First Amendment to the United States

Constitution. Moreover, Sieg has failed to assert and argue an exception to the general rule that a constitutional issue should be raised in the district court in order to preserve the issue for appeal. Accordingly, we decline to review this argument.

Affirmed.