NOT DESIGNATED FOR PUBLICATION

No. 113,074

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SCOTT KINNEY,
*Appellant*,

v.

JAMES HEIMGARTNER,
*Appellee*.

MEMORANDUM OPINION

Appeal from Butler District Court; JOHN E. SANDERS, judge. Opinion filed December 11, 2015.
Affirmed.

*Nancy Ogle*, of Ogle Law Office L.L.C., of Wichita, for appellant.

*Michael J. Smith*, of Kansas Department of Corrections, for appellee.

Before GREEN, P.J., GARDNER, J., and JOHNSON, S.J.

*Per Curiam*:  After a disciplinary hearing at Ellsworth Correctional Facility, Scott
Kinney was found guilty of undue familiarity with staff, being an accessory to trafficking
contraband into a penal institution, and violating telephone regulations. Kinney
challenged that finding by filing a K.S.A. 60-1501 habeas corpus petition in Butler
County district court, alleging seven due process violations and violation of an Internal
Management Policies and Procedure (IMPP). The district court summarily dismissed the
petition, finding that Kinney failed to state a claim, that the hearing officer's decision was
supported by sufficient evidence, and that no due process violation had been shown.
Kinney timely appeals, but we find no reversible error.

1

*Procedural background*

In early 2014, while Kinney was an inmate at the Ellsworth Correctional Facility, prison officials suspected illegal narcotics were being trafficked into the facility. Their investigation found that correctional officer Joseph Davis was involved in the trafficking. Evidence found on Davis linked Kinney to the trafficking operation. Investigators also discovered a voicemail from Kinney's mother on Davis' phone, in which she said Kinney had told her to call. She left that voicemail the same day that Kinney had called his mother and told her to call "Joe" (Davis), saying that "Joe" would be able to get her some money.

As a result of the investigation, a disciplinary report was filed against Kinney, charging him with being unduly familiar with staff, being an accessory to trafficking contraband into a penal institution, and violating telephone regulations. Davis was fired and pleaded guilty to trafficking contraband into a correctional facility.

Kinney was served with the disciplinary report on May 21, 2014, at approximately 7:34 p.m. On May 23, 2014, his disciplinary hearing began. At the hearing, Kinney testified some inmates were extorting money from him, that he was paying other inmates for protection, and that he had not given his mother's number to Davis. Specifically, he claimed he had given his mother's number to some inmates who were protecting him so they could contact her for payment for his protection, but because his mother did not have enough money other inmates had beaten him up. The hearing was then recessed.

Kinney filled out a witness request form, but the parties' dispute its timeliness. The form is dated the day of the hearing—May 23, 2014. But the record also includes an acknowledgement and waiver of rights form for Kinney dated May 23 signed by the hearing officer. On it, the hearing officer checked certain boxes but did not check the box stating, "I submitted request for Witness Form within 48 hours after receipt of the

2

Disciplinary Report." Plaintiff received the disciplinary report on May 21. And the hearing officer did not sign Kinney's witness request form until May 30, 2014, the date Kinney's hearing reconvened. That form requested that a correctional officer and a mental health professional be called as witnesses on Kinney's behalf, but it did not indicate whether the request was approved or disapproved and did not provide any explanation for the hearing officer's decision.

Further, on some date not reflected in the record, Kinney verbally requested staff assistance to aid him at the disciplinary hearing and to question relevant witnesses. The hearing officer signed a staff assistance form on May 23, stating that based on his personal observation of Kinney and his conversation with Kinney, he found Kinney was not in need of staff assistance in accordance with K.A.R. 44-13-408. So Kinney received no staff assistance during his hearing.

When the hearing reconvened on May 30, Kinney admitted having told his mother to call Davis. The reporting officer or the person who conducted the investigation also testified, saying that Kinney was linked to Davis not only by notes found in Davis' possession which had Kinney's mother's phone number and address on them, but also by the testimony of another inmate. Neither the correctional officer nor the mental health professional Kinney had requested as witnesses testified. Ultimately, the hearing officer found Kinney guilty on all charges and sentenced him to 60 days of disciplinary segregation, $45 in fines, 180 days of restricted privileges, and forfeiture of 180 days of good time credit.

The warden approved the hearing officer's decision, as did the Secretary of the Kansas Department of Corrections. Kinney then filed a K.S.A. 60-1501 habeas corpus petition in Butler County district court, alleging seven due process violations and a violation of IMPP 02-118Q(1)a. The prison answered the petition, arguing that Kinney failed to state a claim, that the hearing officer's decision was supported by sufficient

3

evidence, and that no due process violations had been shown. The district court agreed and summarily dismissed Kinney's petition, giving rise to this appeal.

*Due process claims*

Kinney raises two procedural due process claims on appeal:  (1) the hearing officer denied his request to call witnesses to testify at his hearing without providing the necessary explanation; and (2) the hearing officer improperly denied his request for staff assistance.

*Our scope of review*

A K.S.A. 60-1501 petition is subject to summary dismissal unless the petitioner's allegations show "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). Further, summary dismissal is proper "if, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from undisputed facts, or from incontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists." 289 Kan. at 648-49; see also K.S.A. 60-1503(a). Our review of the summary dismissal of a K.S.A. 60-1501 petition is unlimited, 289 Kan. at 649, as is our review of whether the petitioner's due process rights were violated, *Hogue v. Bruce*, 279 Kan. 848, 850, 113 P.3d 234 (2005).

*Due process analysis, generally*

When considering whether a procedural due process claim has been stated, we apply a two-step analysis. *Johnson*, 289 Kan. at 649. The first step requires us to determine whether the State "deprived the petitioner of life, liberty, or property." 289 Kan. at 649. If so, we must then decide the extent and nature of the procedural process

4

the petitioner is due. 289 Kan. at 649. Generally, in prison disciplinary hearings, an inmate is entitled to written notice of the charges, an impartial hearing, the opportunity to call witnesses, the opportunity to present documentary evidence, and a written statement of the hearing officer's findings, including the evidence and reasons supporting the decision. *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 627, 24 P.3d 128 (2001).

*Kinney has a protected property and liberty interest*

We answer the first question in Kinney's favor. The State sentenced Kinney to pay $45 in fines, forfeit 180 days of good time credit, serve 180 days of restricted privileges, and spend 60 days in disciplinary segregation. While being placed in disciplinary segregation may not implicate a life, liberty, or property interest, the Due Process Clause is implicated when the State takes even a small amount from an inmate's prison account in order to pay a fine imposed on the inmate. *Anderson v. McKune,* 23 Kan. App. 2d 803, 807, 937 P.2d 16, *rev. denied* 262 Kan. 959, *cert. denied* 522 U.S. 958 (1997). And in Kansas, good time credits already earned constitute a protected liberty interest. *Pierpoint*, 271 Kan. at 626. Thus, Kinney had a protected property and liberty interest.

*Denial of witness request*

We thus examine whether Kinney received the procedural process he was due. Due process requirements are flexible and call for only such procedural protections as the particular situation demands. *In re Care & Treatment of Ontiberos*, 295 Kan. 10, 22, 287 P.3d 855 (2012). We begin by reviewing the regulations which created the procedural protections that the prison allegedly violated.

According to K.A.R. 44-13-101(c)(5), an inmate may request "to have witnesses called to testify on the inmate's behalf." When determining whether to allow an inmate to call another inmate or prison employee to testify, the hearing officer must "balance the inmate's interest in avoiding loss of good time and assessment of a fine or placement in disciplinary segregation against the needs of the facility." K.A.R. 44-13-405a(a). Those needs are listed in K.A.R.44-13-405a(a).

The hearing officer has broad discretion in determining whether to grant or deny an inmate's witness request. K.A.R. 44-13-405a(b). But if the hearing officer denies the witness request, he or she must make a written explanation on the record unless it would endanger any person. K.A.R. 44-13-405a(e). Further, K.A.R. 44-13-307(c) provides that the "denial of a request for witnesses shall be documented, including the reason or reasons for the denial, either on the request form or in the disciplinary case record." When the denial of a witness request is at issue, the prison officials have the "'burden of persuasion as to the existence and sufficiency of such institutional concerns.'" *Hogue*, 279 Kan. at 853. Here, the hearing officer's denial of Kinney's witness request was tacit, undocumented, and unexplained.

The principles underlying the Kansas regulation are derived from United States Supreme Court decisions. In *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), the Court held that when facing a disciplinary proceeding, an inmate may call witnesses and present documentary evidence unless doing so will be "unduly hazardous to institutional safety or correctional goals." When an inmate's witness request is denied, prison officials must explain why the request was denied either by making it part of the record at the disciplinary hearing or by presenting testimony in court. *Ponte v. Real*, 471 U.S. 491, 497, 105 S. Ct. 2192, 85 L. Ed. 2d 553 (1985). The due process requirements described in *Wolff* will be satisfied so long as the prison officials' reasons for denying the witness request "are logically related to preventing undue hazards to 'institutional safety or correctional goals.'" 471 U.S. at 497.

6

Here, the hearing officer did not explain why Kinney's witness request was denied, so no institutional concerns are alleged. In fact, the "approved" and "disapproved" boxes on the request form were even left unchecked. Kinney claims the absence of any stated explanation for the denial warrants our reversal of the district court's summary dismissal. This court has, in fact, reached that conclusion in cases in which *timely* witness requests were made. See, *e.g.*, *Washington v. Roberts*, 37 Kan. App. 2d 237, 245, 152 P.3d 660 (2007); *Dempsey v. Roberts*, No. 110,481, 2014 WL 2228325, *5-6 (Kan. App. 2014) (unpublished opinion).

*Timeliness of witness request*

The prison argues, however, that Kinney's witness request was untimely. First, it claims Kinney failed to submit his witness request within 48 hours after he received the disciplinary report, as required by K.A.R. 44-13-306, because the corresponding box on the acknowledgement form was left unchecked. The prison also argues that Kinney filled out his request form sometime after the disciplinary hearing began on May 23, 2014, and did not submit it until his hearing reconvened on May 30, 2014, because that is the date on which the hearing officer signed the form. The prison further relies on K.A.R. 44-13-403(o), which provides: "A witness request made at the hearing and not previously submitted shall not be permitted unless exceptional circumstances outside the control of the inmate exist and the testimony would most likely affect the outcome of the hearing."

The record does not clearly indicate when Kinney made his request. It is undisputed that Kinney initially received the disciplinary report on May 21 at 7:34 p.m. and was required to submit his witness request within 48 hours thereafter. His witness request is dated May 23, 2014, so on its face it indicates Kinney made his request within 48 hours of having received the disciplinary report. Further, in its answer to Kinney's K.S.A. 60-1501 petition, the prison acknowledged that Kinney submitted his witness request on May 23, 2014, not on May 30, 2014, as now alleged in its brief.

7

But Kinney's acknowledgement and waiver form also dated May 23 indicates that Kinney had not submitted a witness request form within 48 hours of having received the disciplinary report. The evidence is thus disputed regarding the timeliness of Kinney's witness request. In such cases we do not weigh the evidence, but will find the requirements of due process satisfied if some evidence supports the hearing officer's decision.

In the context of a disciplinary proceeding, however, judicial review of the evidence supporting a disciplinary sanction is extremely limited.

"We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced.... [Citation omitted.]' Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. [Citations omitted.]" *Superintendent v. Hill,* 472 U.S. 445, 455-56, 86 L. Ed.2d 356, 105 S. Ct. 2768 (1985).

This standard of review has been adopted by Kansas appellate courts in cases involving constitutional challenges to disciplinary sanctions. *Sammons v. Simmons,* 267 Kan. 155, 158-59, 976 P.2d 505 (1999); *Anderson v. McKune,* 23 Kan. App.2d 803, 807-08, 937 P.2d 16, *rev. denied* 262 Kan. 959, *cert. denied* 522 U.S. 958 (1997)." *Anderson v. Bruce*, No. 96,687, 2007 WL 1175860 (Kan. App. 2007) (unpublished opinion).

Here, the evidence relied upon by the prison to show that Kinney's request was not timely is "some evidence" supporting the hearing officer's decision not to grant Kinney's request. See *Sammons*, 267 Kan. at 158-59.

*Harmless error*

Nonetheless, even if Kinney's request were untimely, the hearing officer is required to "inform the inmate of any witness deemed waived by the failure to make a timely request." K.A.R. 44-13-403(o). Our record does not indicate the prison did so. To the extent the prison attempts to explain in its brief why Kinney's witness request was denied, "'post-hoc hypothesizing does not allow this court to determine whether the prison officials' decision was actually based on these reasons or was purely arbitrary.'" *Washington*, 37 Kan. App. 2d at 245. Thus, in failing to explain to Kinney why his witness request was denied, the prison erred.

But even errors of constitutional magnitude do not require reversal if they are harmless. *State v. Ventris,* 285 Kan. 595, 608, 176 P.3d 920 (2008), *rev'd on other grounds* 556 U.S. 586, 129 S. Ct. 1841, 173 L. Ed. 2d 801 (2009). This court can find the error harmless when the party benefitting from the error persuades us "beyond a reasonable doubt that the error had little, if any, likelihood of changing the outcome of the trial." 285 Kan. at 608.

> "Nevertheless, 'the erroneous admission [or exclusion] of evidence is subject to review for harmless error.' See K.S.A.2014 Supp. 60-261; *State v. Greene,* 299 Kan. 1087, 1095, 329 P.3d 450 (2014). Factors an appellate court can consider in reviewing the erroneous exclusion of evidence for harmless error include: 'the importance of the witness' testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the case.' *State v. Ultreras,* 296 Kan. 828, Syl. ¶ 11, 295 P.3d 1020 (2013)." *State v. Henderson*, No. 110,917, WL 18821109 (Kan. App. 2015) (unpublished opinion).

We consider the applicable factors here. We first examine the nature of the testimony Kinney's witnesses may have offered, as that testimony is summarized in

Kinney's witness request form. Kinney claims a correctional officer would have testified that the year before the investigation about Davis and Kinney began, Kinney had let him know that another inmate possessed drugs in the prison. The officer would also have testified that 2 weeks before the investigation began Kinney had given him information about contraband. Kinney claims his other witness, a mental health staff member, would have testified that Kinney had told her that other inmates had beaten him and had extorted money from him 10 days before the investigation began.

The testimony of the witnesses Kinney requested appears to relate primarily, if not solely, to the accessory charge. The thrust of this testimony is to show that even before Kinney had been notified of the investigation of him and Davis, Kinney had informed officers about other inmates' involvement with drugs, and had himself been targeted for extortion and beatings. The desired effect of this testimony appears to be to paint Kinney as cooperative, as willing to report drugs in the prison, and as a victim rather than a drug trafficker—character evidence of sorts.

Even so, such testimony would not have swayed a reasonable person to believe Kinney had not trafficked drugs with Davis, as it is only marginally relevant, if at all, to his disciplinary case. First, that Kinney told a correctional officer a year earlier that another inmate had drugs in his legal box or even that Kinney might have provided some information about contraband more recently does not refute the facts showing that Kinney, Davis, and Kinney's mother were involved in trafficking drugs into the prison.

Second, the mental health professional's testimony would have been cumulative because Kinney himself testified at the hearing that other inmates had beaten him, and the witness would have testified only that Kinney had told her so. Kinney fails to show how the witnesses' testimony would have otherwise been relevant.

Further, the overall strength of the case against Kinney is compelling. Davis pleaded guilty to trafficking contraband into a correctional facility based on many of the same facts that led to Kinney's disciplinary charges. Notes and other evidence found in Davis' possession expressly implicated Kinney. Another inmate's testimony also led investigators to Kinney, providing independent corroboration of Kinney's involvement. Notes that were some type of pay slip contained the phone number and address of Kinney's mother, further linking Kinney to the drug trafficking. And Kinney admitted he had told his mother to call Davis.

We conclude that the prison's error was harmless, as we are persuaded beyond a reasonable doubt that the outcome of the disciplinary hearing would not have changed had the hearing officer stated his reasons for denying the desired witnesses or even had both of Kinney's desired witnesses testified. See, *Ventris,* 285 Kan. at 608.

*Denial of staff assistance*

We next consider Kinney's contention that the prison's failure to appoint a staff member to assist him during the disciplinary hearing denied him due process.

K.A.R. 44-13-408(a) requires a hearing officer to appoint a prison staff member when one of six conditions is present, "to act as staff assistant to aid the inmate at the disciplinary hearing and to question relevant witnesses." The sole condition arguably applicable here is when, at the disciplinary hearing "[t]estimony or other evidence will be given, either directly or indirectly, by a confidential inmate informant or witness." K.A.R. 4-13-408(a)(4). Kinney claims the evidence against him included testimony from another inmate.

The record, however, does not show this other inmate was a confidential informant or witness, as is necessary under the statute. Nor does the record show that Kinney ever

11

attempted to discover the identity of the inmate, which would have confirmed whether the inmate was a confidential informant. The record reflects that the hearing officer met with Kinney and spoke to him about this issue before denying Kinney's request. The due process requirements were satisfied because the hearing officer's decision was supported by some evidence. *Sammons*, 267 Kan. at 158-59. We thus find no error in the prison's failure to appoint a staff member to assist Kinney.

Further, Kinney fails to explain how having staff assistance would have aided him or produced a different result. Based on the strength of the evidence against Kinney which we have summarized above, we find even if the prison had erred in not having staff assist Kinney, the result of the hearing would have been the same. Accordingly, any error was harmless. See *Ventris,* 285 Kan. at 608.

Affirmed.