NOT DESIGNATED FOR PUBLICATION

No. 123,711

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KENNETH D. LEEK,
*Appellant*,

v.

ANDY BROWN, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed July 22, 2022. Affirmed.

*Shannon S. Crane*, of Hutchinson, for appellant, and *Kenneth D. Leek*, appellant pro se.

*Jon D. Graves*, legal counsel, Kansas Department of Corrections, of Hutchinson, for appellee.

Before SCHROEDER, P.J., GREEN and GARDNER, JJ.

PER CURIAM: Following proceedings in two prison disciplinary cases, Kenneth D. Leek filed a K.S.A. 60-1501 petition in the district court. The district court held a hearing on Leek's claims but eventually dismissed Leek's petition. Leek appeals that decision, challenging the process in the disciplinary proceedings and in the district court. Even assuming that the allegations in Leek's petition are true, we find no error in the district court's dismissal.

*Factual and Procedural Background*

In 2019, Hutchinson Correctional Facility (HCF) officials charged and later found Leek guilty of violating the following prison regulations in case Nos. 19-07-350E and 19-07-443E:

- K.A.R. 44-12-305, a class II offense, for insubordination or disrespect to an officer;
- K.A.R. 44-12-306, a class I offense, for threating or intimidating a person; and
- K.A.R. 44-12-503A, a class III offense, for being in an area of the prison without proper authorization.

*Facts Surrounding 19-07-350E*

On July 19, 2019, Officer J. Cain called Leek into the chaplain's office at HCF to talk about religious headgear Leek possessed without proper authorization. Cain told Leek the unauthorized headgear would have to be sent somewhere outside of the prison or destroyed. Another officer, D. Wilson, handed Leek mailing materials. Then, according to Cain, Leek responded with aggressive and threatening statements—Leek told Cain to stop laughing and said Cain would not be "be laughing long." Leek also blamed Cain for starting the conflict, saying he "started this [s]hit." Cain, Wilson, and Chaplain Halfmoon witnessed this event.

Cain filed a written report, which became the basis of disciplinary charges against Leek under K.A.R. 44-12-305, for insubordination or disrespect, and K.A.R. 44-12-306, for threating or intimidating. Leek moved to dismiss the complaint, alleging fraud and retaliation. Leek claimed the charge was fraudulent because although Cain had signed the report, he had not written it—the handwriting showed Wilson had written the report. He then argued that Wilson likely wrote the report in retaliation for a recent grievance Leek

2

filed against him. The hearing officer rejected these claims and denied Leek's motion to dismiss.

The record on appeal does not include a transcript of the disciplinary hearing, but according to the hearing officer's written summary of the hearing, Leek signed a form acknowledging that he had received proper notice of the charges and the hearing and pleaded not guilty to both offenses. Leek also waived his right to question the reporting officer, and he did not submit a witness request.

The hearing officer's summary also shows that Halfmoon appeared at the disciplinary hearing and gave sworn testimony. Halfmoon denied seeing Cain laugh at Leek during the incident but testified that Leek had said: "Cain you started all this. You[]'re laughing now, but you ain't going to be laughing for long."

Leek denied that he had made any "threats," but he did not deny having made the statements Halfmoon attributed to him. Leek would later claim that contrary to the hearing officer's written summary, Halfmoon did not appear at the disciplinary hearing and thus did not provide sworn testimony.

Relying on Halfmoon's testimony and Cain's disciplinary report, the hearing officer found Leek guilty and imposed a $5 fine.

*Facts Surrounding 19-07-443E*

Around a week after the incident in Halfmoon's office, Wilson filed another disciplinary report against Leek for being in two restricted areas of the prison without permission: the prison gym and near Dorm One. According to Wilson's report, Leek went to the prison gym without permission, and Leek was seen "talking thru the screen windows of Dorm One and this is not allowed and is also a restricted area."

3

HCF officials charged Leek with being in a restricted area under K.A.R. 44-12-503(a) and set the matter for a disciplinary hearing. After receiving proper notice, Leek submitted a request to have two witnesses testify on his behalf: inmate Lewis Anderson and HCF's activities' specialist William Perrone. Leek also moved to dismiss, claiming Perrone had given Leek ongoing permission to go to the gym anytime he was there.

The hearing officer denied Leek's motion to dismiss and partially denied his witness request, finding Anderson did not witness the incident reported.

Rather, Leek challenges how the hearing officer treated his witness request for Perrone. A copy of the witness request form shows the hearing officer approved Leek's request for Perrone to appear. But Leek would later claim that his request for Perrone was impliedly denied because Perrone never appeared at the disciplinary hearing. And the signature lines for Perrone and the hearing officer's signature on the summons for Perrone to appear at the hearing were left blank.

The hearing officer's summary of the disciplinary hearing states: "Perrone was sworn in as a witness. The hearing officer ask[ed] Perrone if he called Leek out to the gym on 7/26/19 to work in the craft room. Perrone responded 'Negative.'"

Leek testified that Perrone gave him permission to "go to the gym anytime he was there."

Relying on Perrone's testimony and Wilson's report, the hearing officer found Leek violated K.A.R. 44-12-503(a) and ordered Leek to pay a $3 fine.

Leek appealed both disciplinary decisions to the Secretary of Corrections. The Secretary of Corrections affirmed Leek's three convictions, finding sufficient evidence

supported them and the hearing officer substantially complied with the required administrative procedures.

Leek then petitioned for review in the district court. The State responded to Leek's claims and moved to dismiss Leek's petition as untimely.

The district court held a nonevidentiary hearing on Leek's petition. The State appeared through counsel. Leek did not ask for counsel but appeared at the district court and argued pro se.

At the hearing, the State argued that Leek's petition was untimely because it had not been filed within 30 days of the Secretary of Correction's disposition. The State also argued that the district court should dismiss Leek's claims because the record showed relief was not warranted.

Leek again raised claims regarding fraud, retaliation, bias, and due process. Leek argued that Cain did not write the disciplinary report in 19-07-350E and that Wilson's filing of the disciplinary report was retaliatory. Leek also claimed that the hearing officer violated his due process rights, showed bias in favor of the reporting officers, and fraudulently stated that various witnesses had appeared at the disciplinary hearings.

The district court found that Leek "substantially compli[ed]" with the filing requirements and found jurisdiction to consider his petition. The district court allowed Leek to argue, including his claims about the allegedly fraudulent report and retaliation.

In its written order, the district court found the handwriting in Cain's disciplinary report was different than Cain's signature, but that fact was immaterial. The district court found Leek's claims regarding bias, fraud, and retaliation unsupported and unpreserved. The district court also found that Leek had waived his right to develop the facts necessary

to consider his retaliation defense. The district court likewise rejected Leek's due process claims, finding some evidence supported Leek's convictions. The district court thus dismissed Leek's K.S.A. 60-1501 petition.

Leek timely appeals.

*Did the District Court Err in Dismissing Leek's Petition?*

Leek challenges the district court's summary dismissal of his K.S.A. 60-1501 petition. Leek's appointed appellate counsel submitted an appellate brief on Leek's behalf, arguing the hearing officer violated Leek's due process rights by ignoring his theories of defense. We granted Leek's request to file a supplemental brief pro se. In it, Leek claims the hearing officer violated his due process rights by denying his witness requests, failing to conduct the hearing in a fair and impartial manner, and failing to make an accurate and complete record of the disciplinary proceedings. Leek also asserts that the district court erred by not appointing him counsel when the State appeared through counsel.

*Standard of Review and Basic Legal Principles*

K.S.A. 2021 Supp. 60-1503 authorizes the summary dismissal of a habeas corpus petition "[i]f it plainly appears from the face of the petition and any exhibits attached thereto that the plaintiff is not entitled to relief in the district court." Relief is warranted only when the petition alleges "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). "When determining if this standard is met, courts must accept the facts alleged by the inmate as true." *Hogue v. Bruce*, 279 Kan. 848, 850, 113 P.3d 234 (2005).

When a district court summarily dismisses a petition without issuing a writ under K.S.A. 2021 Supp. 60-1503(a), appellate courts are in just as good a position as the

6

district court to determine whether relief is warranted. "The same is true after a judge issues a writ and the court determines (after a preliminary habeas corpus hearing) that 'the motion and the files and records of the case conclusively show that the inmate is entitled to no relief.' K.S.A. 2020 Supp. 60-1505(a)." *Denney v. Norwood*, 315 Kan. 163, 175, 505 P.3d 730 (2022). So, our review is unlimited. See *Johnson*, 289 Kan. at 649. We assume the facts alleged are true and if we find those facts support the petitioner's claims under any theory, we must reverse the decision to summarily dismiss. *Washington v. Roberts*, 37 Kan. App. 2d 237, 240, 152 P.3d 660 (2007). We also "broadly construe" pro se petitions. *Laubach v. Roberts*, 32 Kan. App. 2d 863, 868, 90 P.3d 961 (2004).

Due process requirements of a prison's disciplinary proceeding are satisfied if some evidence supports the hearing officer's decision. *Sammons v. Simmons*, 267 Kan. 155, 159, 976 P.2d 505 (1999). Whether an individual's due process rights were violated is a question of law, and this court's review is unlimited. It is the inmate's burden to prove a constitutional violation occurred. *Starr v. Bruce*, 35 Kan. App. 2d 11, 12, 129 P.3d 583 (2005).

*Claims Raised in the District Court*

In his petition, Leek alleged fraud and due process violations. Leek claimed that contrary to the hearing officer's factual findings, no witnesses appeared at his disciplinary hearings. Leek thus claimed that Halfmoon and Perrone provided unsworn statements to the hearing officer outside his presence. Leek also argued that the hearing officer wrongly denied his request to have Perrone and Anderson testify. He also contended that the hearing officer did not conduct a fair and impartial hearing or issue a complete and accurate record of the disciplinary hearing.

*Rules Applicable to Due Process Analyses*

Leek's due process arguments require a two-step analysis. First, we determine whether the State has deprived Leek of life, liberty, or property. If so, we next determine the extent and the nature of the process due. *Hogue*, 279 Kan. at 850-51; *Washington*, 37 Kan. App. 2d at 240.

The hearing officer imposed a $5 fine in 19-07-350E and a $3 fine in 19-07-443E, so Leek was deprived of property. The imposition of a fine implicates an inmate's property interest. *Stano v. Pryor*, 52 Kan. App. 2d 679, 682, 372 P.3d 427 (2016). So Leek's claim raises a constitutionally protected property interest.

We must therefore consider the process provided in each case. As a general matter, inmates are not owed "the full panoply of rights due a defendant in [criminal] proceedings." *Hogue*, 279 Kan. at 851 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 [1974]). Instead, inmates in disciplinary proceedings have only limited rights, including "an impartial hearing, a written notice of the charges to enable [the inmate] to prepare a defense, a written statement of the findings by the factfinders as to the evidence and the reasons for the decision, and the opportunity to call witnesses and present documentary evidence." *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, Syl. ¶ 6, 24 P.3d 128 (2001). *In re Pierpoint* found that "*Wolff* did not require the right to confront and cross-examine witnesses or the right to counsel in all cases. 418 U.S. at 567-70." 271 Kan. at 627-28. If an inmate is denied a request to have a witness called to testify on his or her behalf, the hearing officer must make a record explaining the decision. See K.A.R. 44-13-101(c)(5); K.A.R. 44-13-405a(e).

But a hearing officer's violation of KDOC regulations does not, by itself, compel this court to interfere. See *Anderson v. McKune*, 23 Kan. App. 2d 803, 810, 937 P.2d 16 (1997) ("'Maintenance and administration of penal institutions are executive functions

8

and it has been said that before courts will interfere the institutional treatment must be of such a nature as to clearly infringe upon constitutional rights, be of such character or consequence as to shock general conscience or be intolerable in fundamental fairness.'") (quoting *Levier v. State*, 209 Kan. 442, 450-51, 497 P.2d 265 [1972]). Our Supreme Court recognized this principle in *Hogue*:

> "'The mere fact that a hearing officer in a prison discipline case has not followed [Department of Corrections] procedural regulations does not of itself violate fundamental fairness that rises to an unconstitutional level. Without much more, a petition for habeas corpus alleging procedural errors at a prison disciplinary hearing must fail.'" 279 Kan. at 855-56.

So a hearing officer's failure to comply with a regulation does not necessarily establish a due process violation, unless the failure violates fundamental fairness and rises to an unconstitutional level. See *Washington*, 37 Kan. App. 2d at 242.

*Leek does not allege facts to support his due process claim in 19-07-350E and some evidence supports his convictions in that case.*

Contrary to Leek's argument at the district court hearing, the record shows Leek did not request a witness in 19-07-350E. He also signed a waiver of his right to confront the reporting officer. So the district court properly dismissed those procedural claims.

Leek's due process claims also necessarily fail because even assuming neither Halfmoon nor Cain appeared at the hearing, the record still contains some evidence supporting his convictions. No more is required. When we review this type of claim, we determine whether some evidence supports the decision by the prison disciplinary board. *Miller v. McKune*, 38 Kan. App. 2d 810, 814, 174 P.3d 891 (2006). We do not reexamine the entire record, make an independent assessment of the credibility of witnesses, or reweigh the evidence, and we give broad deference to prison officials maintaining

9

discipline in prison settings. *Sammons*, 267 Kan. 155, Syl. ¶ 3; *Anderson*, 23 Kan. App. 2d at 807-08. Due process does not require that the evidence preclude other possible outcomes, only that the evidence supports the conclusion reached by the disciplinary authority. *May v. Cline*, 304 Kan. 671, Syl. ¶ 1, 372 P.3d 1242 (2016).

K.A.R. 44-12-305 states that an inmate must be "attentive and respectful towards employees, visitors, and officials. The showing of disrespect, directly or indirectly, or being argumentative in any manner shall be considered insubordination." K.A.R. 44-12-306 prohibits an inmate from threatening or intimidating, "either directly or indirectly, any person or organization." This regulation also provides that the "subjective impression of the target of the alleged threat or intimidation shall not be a factor in proving a violation of subsection (a)." K.A.R. 44-12-306(c).

At Leek's disciplinary hearing in 19-07-350E, the hearing officer presented Cain's disciplinary report and relied on it as Cain's sworn statement. In *Miller*, 38 Kan. App. 2d at 815, citing various regulations, a panel of this court considered a due process claim similar to Leek's. The *Miller* panel explained that sworn statements in an officer's report should be given the same deference as in-person testimony:

> "K.A.R. 44-13-201(c)(2) states: 'The investigation report may be adopted by the charging officer both as the charge itself and as the officer's sworn statement in lieu of testimony in any case, in accordance with the regulations.'
> "In this case when the sworn statement of the reporting officer was presented, it is valid and persuasive evidence just as if the officer had appeared and testified in person. The district court's finding that Warden McKune presented 'no evidence' is not correct and is directly contradicted by a full reading of all of the provisions of K.A.R. 44-13-201.
> "The record further reflects that Miller signed a waiver of rights dated November 18, 2004, in which it was stated: 'I waive reporting officer/reporting staff member testifying (Class I Cases).' This waiver was also acknowledged by Hearing Officer Cooper.

"The fact that the disciplinary report is to be considered by the hearing officer is further clarified and confirmed by the provision of K.A.R. 44-13-403(p) which states: 'The hearing officer, in deciding whether or not the inmate is guilty, shall consider only the relevant testimony *and report.*' It is clear that there was evidence presented to the hearing officer . . . [that] Miller was involved in fighting under K.A.R. 44-12-301. There was clearly some evidence that he was. This evidence was properly considered." 38 Kan. App. 2d at 815.

Cain's report provided a first-person description of the reported incident. The report alleged that after telling Leek to send his religious headgear somewhere outside of HCF, Leek "became verbally aggressive towards [Cain] stating that [Cain] started this and that I better quit laughing." Cain also claimed that Leek "in a very hostile voice and threatening manner" stated that Cain was "not going to be laughing long. [Cain] started this [s]hit."

Leek questions the authenticity of the report based on an alleged difference between the handwriting in the report and Cain's signature on the report. But the hearing officer found that Cain signed the report. He thus took responsibility for it as though he had written it. And even though Leek denied making any threats, he did not deny making the statements Cain quoted in his report. We thus find the hearing officer properly relied on the sworn statements in Cain's report. Those statements provide some evidence to support Cain's convictions under K.A.R. 44-12-305 and K.A.R. 44-12-306 and thus refute Leek's due process claim.

Leek also challenges the hearing officer's rejection of his retaliation defense. But the hearing officer properly rejected that argument as immaterial. Regardless of why Wilson may have drafted the body of Cain's report, the evidence supports Leek's convictions. As explained by the *Miller* panel, evidentiary decisions related to such defenses should be made by the hearing officer:

11

"The finding which the hearing officer is allowed to make under prison regulations is based on K.A.R. 44-13-403(j), which states: 'The hearing officer shall rule on all matters of evidence. Strict rules of evidence, as used in a court of law, shall not be required, but the hearing officer shall exercise diligence to admit reliable and relevant evidence and to refuse to admit irrelevant or unreliable evidence.' Our duties in the consideration of a K.S.A. 60-1501 petition involving disciplinary proceedings in a prison is to give 'broad deference to prison officials in maintaining discipline in prison settings.' *Anderson*, 23 Kan. App. 2d at 809. The fact we may not have reached the same conclusion as the hearing officer is not material. The crucial fact to be determined is whether there is 'some evidence' upon which the decision was reached and that clearly existed under the undisputed facts shown by the record in this case.

"The question of self-defense was an issue before the hearing officer. But, by the decision of guilty of fighting being reached, it is clear the existence of this defense was resolved against Miller. The prosecution was not obligated to disprove self-defense, and the hearing officer as the factfinder in a prison disciplinary proceeding resolved this issue." 38 Kan. App. 2d at 815-16.

We agree and find no error in this portion of the disciplinary proceedings.

Leek also failed to provide evidence at the disciplinary hearing to support his claim of retaliation, which requires proof of the following:

"(1) the plaintiff was engaged in a constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury sufficient to chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially based on the plaintiffs exercise of a constitutionally protected right." *Bloom v. Arnold*, 45 Kan. App. 2d 225, 233, 248 P.3d 752 (2011).

Leek failed to show that Wilson likely knew that Leek had recently filed a grievance against him and Leek provided no evidence showing a causal connection between his grievance against Wilson and the decision to file a disciplinary report. So the district court did not err by dismissing this argument. See *Requena v. Cline*, No. 108,395, 2013

WL 1876471, at *4 (Kan. App. 2013) (unpublished opinion) (similarly finding a lack of obvious connection when reviewing disciplinary proceeding).

The undisputed evidence thus supports Leek's convictions in 19-07-350E. We affirm the district court's summary dismissal of those claims.

*Leek does not allege facts to support his due process claim in 19-07-443E and some evidence supports his conviction in that case.*

In 19-07-443E, Leek submitted requests to call two witnesses in his defense, Anderson and Perrone. The hearing officer rejected Leek's request for Anderson, an inmate, because he was not alleged to have witnessed any of the events at issue. Leek does not allege that Anderson had personal knowledge of the events, but he claims he could help Leek's retaliation claim. Based on our reasoning about the retaliation claim above, we find no error in the hearing officer's decision not to call Anderson as a witness for Leek.

We focus, as Leek does, on his request to call Perrone. The parties agree that Leek requested Perrone as a witness. In his request and at the disciplinary hearing, Leek claimed that Perrone had given him continuing permission to go to the gym whenever Perrone was there.

The hearing officer's summary of the disciplinary hearing states that Perrone gave sworn testimony and he denied having given Leek permission to go to the gym on the reported date. But in his K.S.A. 60-1501 petition, Leek claimed that Perrone did not appear at the hearing. We must assume Leek's allegation is true, but the two statements are not necessarily inconsistent. HCF suggests that the hearing could have been held with the hearing officer just outside Leek's cell while Leek was in his cell, and the hearing officer left to call Perrone on the telephone to take his sworn testimony. Thus, Perrone

13

could have given sworn testimony on the telephone. See *In re Pierpoint*, 271 Kan. at 627-28 (noting *Wolff*, 418 U.S. at 567-68, the benchmark case defining process requirements for disciplinary proceedings, requires "the opportunity to call witnesses " but does "not require the right to confront and cross-examine witnesses").

To address that possibility, Leek counters that the hearing officer did not document a reason for denying his witness request and did not question Perrone in front of him. But Leek has not shown that the hearing officer had to do so. The relevant regulations give the hearing officer some discretion about these matters. K.A.R. 44-13-101(c) provides that an inmate's right to call witnesses, confront and cross-examine witnesses, and present documentary evidence is subject to certain limitations.

> "The hearing officer shall have broad discretion in permitting or denying the witness request. In exercising the discretion, the hearing officer shall balance the inmate's request and wishes against the needs of the facility. The goal of the hearing officer shall be to conduct the fact-finding process in a manner leading to the discovery of the truth." K.A.R. 44-13-405a(b).

And although K.A.R. 44-13-101(c)(6) generally provides that an inmate has a right to confront and cross-examine opposing witnesses, that right is "[s]ubject to the limitations and guidelines set out in these regulations and subject to the control of the hearing officer exercised within the parameters of the law and these regulations." A more specific regulation, K.A.R. 44-13-403(1)(1), generally states that each staff member the hearing officer calls as a witness shall be compelled to appear, and the hearing officer shall not receive testimony or evidence outside the presence of the accused inmate. But Leek, not the hearing officer, called Perrone as a witness. And that regulation has an exception that states:  "(q) Confrontation and cross-examination may be denied by the hearing officer if deemed necessary in any case except class I cases." K.A.R. 44-13-403(q). Leek's restricted area violation was not a class I case but a class III case. Leek thus fails to show that the hearing officer's acts violated a relevant regulation.

14

Nor does Leek show that the hearing officer's acts violated his constitutional rights. Confrontation and cross-examination are generally not required in prison disciplinary hearings:

"Although some States do seem to allow cross-examination in disciplinary hearings, we are not apprised of the conditions under which the procedure may be curtailed; and it does not appear that confrontation and cross-examination are generally required in this context. We think that the Constitution should not be read to impose the procedure at the present time and that adequate bases for decision in prison disciplinary cases can be arrived at without cross-examination." *Wolff*, 418 U.S. at 567-68.

After weighing the potential problems that could arise from an inmate's cross-examination, the Supreme Court concluded that "[t]he better course at this time, in a period where prison practices are diverse and somewhat experimental, is to leave these matters to the sound discretion of the officials of state prisons." 418 U.S. at 569; see *In re J.D.C.*, 284 Kan. 155, 167, 159 P.3d 974 (2007) (citing *Wolff*, 418 U.S. at 567-68, for its findings that "rights of cross-examination and confrontation [are] not universally applicable to prison disciplinary hearings"); *Taylor v. Wallace*, 931 F.2d 698, 701 (10th Cir. 1991) (stating due process does not require the confrontation and cross-examination of witnesses in prison disciplinary proceedings); see also *Kucera v. Terrell*, 214 Fed. Appx. 729, 730 (10th Cir. 2006) (unpublished opinion) ("The Sixth Amendment right to confront one's accusers is available only in criminal trials.").

Kansas courts have generally held the same. See *Washington*, 37 Kan. App. 2d at 242 (acknowledging *Wolff* weighs against a constitutional due process right to confront and cross-examine witnesses); *Lowe v. Schnurr*, No. 122,094, 2020 WL 3885705, at *5 (Kan. App.) (unpublished opinion) (finding no constitutional right to confrontation or cross-examination in an inmate's disciplinary hearing), *rev. denied* 312 Kan. 892 (2020); *Rincon v. Schnurr*, No. 114,670, 2016 WL 3031284, at *3 (Kan. App. 2016)

15

(unpublished opinion) (presuming Rincon had no due process right to confront and cross-examine an adverse witnesses, based on *Wolff*).

*Harmless Error*

But even if Leek had a constitutional right to have Perrone appear, and that right was violated, remand is necessary only if we do not find the error harmless. See *Sauls v. McKune*, 45 Kan. App. 2d 915, 921, 260 P.3d 95 (2011) (finding violation of inmate's due process rights harmless error if no reasonable probability of changing outcome of disciplinary hearing).

True, Perrone's testimony fails to rebut Leek's testimony. Leek testified that Perrone had given him continuing permission to go to the gym whenever Perrone was there. Yet Perrone's denial was narrow—he was asked only whether he had "called Lee out to the gym on 7/26/19 to work in the craft room," and he responded negatively.

Still, any error is harmless. The record shows that although Perrone's testimony may have been crucial to Leek's defense of the restricted area violation based on Leek's going to the gym, it had no apparent relation to Leek's separate restricted area violation based on Leek's going to Dorm One.

K.A.R. 44-12-503(a) provides that "[n]o inmate shall enter a restricted area without a direct order by a correctional employee authorized to render this order or unless expressly permitted in writing by the warden." Wilson's report provides some evidence to sustain this conviction. It states that Leek was seen talking through a screen window at Dorm One, which is a restricted area that Leek was not allowed to be in.

Leek testified about going to the gym, claiming he had Perrone's permission to be there. Leek told the hearing officer:

16

"I was in the wood shop. Perrone told me I could go to the gym anytime he was there. He told me that I could be there. I was trying to ask him about that because Wilson told me that I couldn't talk to Perrone. I was asking him if he would be a witness for the other [disciplinary report]. He told me that he would be. Everybody goes out there whenever he is there."

But none of Leek's testimony refuted the Dorm One charge, which formed an independent basis for the disciplinary violation. The hearing officer did not limit its findings to the gym violation, but broadly found that "the inmate was in an area that he was not supposed to be in without permission, it is more likely than not, in the hearing officer[']s opinion, true the incident did happen . . . ." The disciplinary report contains some evidence supporting Leek's conviction under K.A.R. 14-12-503(a) for the Dorm One violation. And the Dorm One violation provides an independent and fully sufficient ground to affirm the district court.

Leek's failure to challenge the independent basis for the disciplinary report means he cannot show that he was actually harmed by the prison's decision not to question Perone in his presence. As such, he has not provided the "something more" that we require when a prisoner raises procedural violations in a habeas petition challenging inmate discipline. See *Anderson*, 23 Kan. App. 2d at 811.

*Right to Representation*

Leek's final claim on appeal that the district court erred by allowing the State to appear through counsel at the district court proceedings without appointing him counsel. The State contends that Leek was not legally entitled to counsel, especially since he did not request counsel.

17

There is no general right to have an appointed attorney in a civil case. We have recognized a right to counsel for a person in Leek's situation seeking habeas relief under K.S.A. 2015 Supp. 60-1501 after the district court has determined that the petition cannot be summarily denied and requires an evidentiary hearing: *Griffin v. Bruffett*, 53 Kan. App. 2d 589, 606-07, 389 P.3d 992 (2017); *Merryfield v. State*, 44 Kan. App. 2d 817, 826, 241 P.3d 573 (2010). And courts routinely appoint counsel when a habeas petition is appealed from the district court to an appellate court. See, e.g., *White v. State*, No. 121,755, 2020 WL 2602031 (Kan. App. 2020) (unpublished opinion); *Wheeler v. State*, No. 120,981 2020 WL 1646810 (Kan. App. 2020) (unpublished opinion). The district court here dismissed Leek's petition without an evidentiary hearing and without Leek asking for counsel, and it appointed counsel for Leek on appeal. Accordingly, Leek fails to show error in the district court's not appointing him unrequested counsel during the preliminary hearing.

Affirmed.